# F. W. E. Grohmann, by his next friend, *v.* E. C. Kirschman, Appellant.

*Malicious prosecution—False imprisonment—Evidence—Judge's direction for acquittal—Justice of the peace.*

In an action to recover damages for malicious prosecution, where the plaintiff claims that there was no probable cause for the prosecution, testimony, to the effect that at the trial of the plaintiff the judge directed a verdict of acquittal and instructed the jury to hold the prosecutor liable for costs, is inadmissible.

In such a case the inquiry as to probable cause goes back to the commencement of the prosecution, and it relates to the facts then known and as they then appeared. The remarks of the trial judge were directed to the question of actual guilt as it appeared after a full investigation and after hearing the testimony of both sides. They were based upon a state of facts different from those which led to the arrest, and were therefore irrelevant.

A justice of the peace illegally ordering or causing a person to be arrested, or refusing to accept bail where the offense charged is bailable, is liable in damages to the injured party in an action of trespass under the act of 1887.

Where in such a case the plaintiff's statement avers the original wrongful arrest and a subsequent wrongful committal to prison, but does not aver the refusal to admit to bail, but the latter fact appears by the evidence, a judgment on a verdict for plaintiff will be sustained.

Argued March 4, 1895. Appeal, No. 123, Jan. T., 1894, by defendant, from judgment of C. P. Berks Co., Dec. T., 1891, No. 17, on verdict for plaintiff. Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Trespass for malicious prosecution and false imprisonment. Plaintiff's statement was as follows:

"That the defendant maliciously, illegally, oppressively, and without probable cause, being at the time hereinafter stated an alderman of the 9th ward, in the city of Reading, Berks county, in the state of Pennsylvania, to wit: On the 17th day of June, A. D. 1891, being a Wednesday, did authorize, order and direct his constable, one George Miller, serving at that time in that capacity for the ward aforesaid, to swear out and lodge before him, the said defendant, a criminal information against the plaintiff, upon the charge of barratry, based, as the plaintiff is informed, upon the allegations that the plaintiff had previously lodged criminal information against two bawdy-house keepers in the city of Reading, said county and state, which were afterwards by the said plaintiff abandoned; that said constable George Miller complied with the request and command of the defendant, and did swear out and lodge before said defendant a criminal information against the plaintiff on the day and year aforesaid, charging said plaintiff with the commission of the crime of barratry; upon said criminal information of barratry against the plaintiff so sworn out and lodged by the said constable George Miller before the defendant in his magisterial capacity, the said defendant issued a warrant of arrest against the plaintiff, directed to the said constable George Miller, who under and by virtue thereof apprehended and arrested the plaintiff on a certain day, to wit: On said 17th day of June, A. D. 1891, committed the said plaintiff to the Berks County prison, where he, said plaintiff, remained in confinement until a certain day, to wit: a Thursday, the 23d day of July, A. D. 1891, when the plaintiff was released upon his giving bail to answer said charge of barratry at the September sessions, 1891, of the court of quarter sessions of said county of Berks; that afterwards, to wit: On the 18th day of Sept., A. D. 1891, the plaintiff was duly arraigned and tried in said court of quarter sessions of the peace of said county of Berks, upon said criminal charge of barratry; was acquitted by direction of the court, and the costs imposed by the trial jury upon the said George Miller, constable and prosecutor of said criminal charge against said plaintiff.

" By reason of which illegal, malicious, oppressive and false imprisonment of the plaintiff by the defendant, the plaintiff has been greatly and grievously damnified and injured in his good name, fame, reputation and credit, has suffered great material loss and injury both during and as a result of his false imprisonment by the defendant, has been brought into disgrace among his neighbors and others, has suffered great anxiety of mind and pain of body, has been, by reason of the illegal and oppressive conduct of the defendant, deprived of his liberty for the space of forty days, during which time plaintiff languished in said jail in the company of thieves, convicts and other outcasts from society, has been obliged to lay out large sums of money in and about procuring his discharge from said imprisonment and defending himself in the premises, and by means of said false imprisonment has been otherwise greatly injured in his credit, reputation and circumstances, to the damage of the plaintiff of ten thousand dollars."

At the trial before ERMENTROUT, P. J., evidence for the plaintiff tended to sustain the averments of the statement, and further to show that, when plaintiff was brought before the defendant for a hearing, bail was refused.

Counsel for plaintiff offered to show that after the evidence was heard by Judge ERMENTROUT he directed the jury to acquit this man, because there was no evidence to support the charge of barratry against the plaintiff in this case, and directed the prosecutor, George Miller, to pay the costs; this for the purpose of showing that the prosecution was groundless, that there was no probable cause for it, and that it should never have been in court.

Mr. Ruhl: " Objected to as immaterial, irrelevant and incompetent; the opinion of the court does not bind anybody in the manner it is proposed to be proven, and it does not tend to prove or disprove malice or want of probable cause; the record is the best evidence, and the only competent evidence in the case."

The Court: " Admitted; exception for defendant." [2]

A. I might, some.   Q. What disposition did he make of it? A. He directed the jury to acquit Grohmann because there was no charge against him; that the charges were not sufficient to hold him.   Q. He directed the jury to acquit him?   A. Yes,

sir. Q. What did the judge say about the costs? A. He said the suit should never have been brought; and the prosecutor for the costs."

The court charged in part as follows:

" [The plaintiff claims that the defendant, occupying the position of alderman in the city of Reading, abused the powers conferred upon him by the laws of this state, by causing the plaintiff to be arrested upon a charge which the defendant knew to be baseless, or at least had no reasonable grounds for believing to be true, and after the defendant's arrest, by refusing him an opportunity to obtain bail and confining him in the Berks County prison.

" If the jury are satisfied, from a fair preponderance of the evidence, that both, or either, of these allegations are true, then the plaintiff is entitled to recover. In other words, if the jury believe, from a fair preponderance of the evidence, that the defendant, Kirschman, instituted this prosecution knowing it to be baseless, or having no reasonable ground for believing it to be true, or if the jury believe, from a fair preponderance of the evidence, that the defendant, Kirschman, when the plaintiff was arrested and brought before him, refused, or threw obstacles in the way of his obtaining bail, and committed him to the prison without the opportunity of obtaining bail, in either of these cases, and in both of these cases, the verdict of the jury will have to be in favor of the plaintiff.] [3]

" If you believe, from the evidence, that he instigated this prosecution, or refused bail, because of a personal ill-will, or because of any sinister motive toward this plaintiff, then you may find for the latter not only such damages as will compensate him for the injuries he has sustained, but such damages as will punish the defendant for an act so grossly in violation of his duties." [4]

Verdict for plaintiff for $347.91.

On rules for a new trial and in arrest of judgment, END-LICH, J., filed the following opinion:

" The evidence produced by plaintiff upon the trial of this cause tended to show the following: Defendant is an alderman in the 9th ward of the city of Reading. Plaintiff had instituted, before another alderman, two prosecutions against alleged bawdy-house keepers residing in defendant's ward. While they

were pending, defendant manifested considerable interest in their issue and some animosity towards the plaintiff, concerning whom he declared that, ' if he ever got the —— Dutchman in his clutches, he would put him to jail, where he belonged.' The prosecutions were dismissed,—a fact by which the defendant, at the time, expressed himself much gratified. He then directed his constable to swear out an information before him charging plaintiff with barratry, upon which he issued a warrant and caused plaintiff's arrest.

" When brought before defendant, plaintiff requested permission and offered to enter bail, but defendant refused and ordered the constable to take plaintiff to prison at once, where he remained from June 17 to July 20, 1891. Put upon his trial in September, 1891, he was acquitted by direction of the court, there being no case against him. There was evidence, consisting of the testimony of the defendant and his constable, denying the agency of the defendant in procuring the lodging of the information against plaintiff and the refusal to accept bail, and some other minor matters.

" The jury was instructed that plaintiff would be entitled to a verdict, either if it was true that the defendant had caused the lodging of the information and the original arrest of the plaintiff, knowing that there was no ground for such a proceeding or having no reasonable cause for believing it to be warranted, and that he refused to accept bail from the plaintiff,— or if either of these allegations were found to be sustained, but that they must find for defendant, even though he directed the constable to make information against the plaintiff, if, in so doing, he acted upon reasonable ground of suspicion (explaining, in this connection, that the justification set up by defendant, viz, information conveyed to him by his constable, would, if honestly believed by defendant, constitute such reasonable ground), and had not refused to accept bail. On the measure of damages, in the event of finding for plaintiff, they were told what to consider on the question of compensation, and that they might give punitive damages if not only the want of reasonable ground for suspicion, but the existence of actual malice and ill will towards plaintiff in the instigation of the prosecution by defendant or in the refusal of bail, had been established. The verdict was for the plaintiff. Is it sustainable ? and can

a valid judgment be entered upon it? These are the questions involved in the rules I have here to dispose of.

" There is a clear distinction between an action for malicious prosecution and one for false imprisonment, McCarthy v. DeArmit, 99 Pa. 63, 70, and therefore a plaintiff cannot recover in a suit for false imprisonment on proof of a case of malicious prosecution : Herzog v. Graham, 9 Lea (Tenn.), 152; nor vice versa : Baldwin v. Weed, 17 Wend. (N. Y.) 224. The distinction arises from the obvious difference between the defendant's relation to the ultimate wrong sought to be recovered for in the one action and in the other, and the character of the defendant's immediate act in each. It is the lawful right of every citizen to set on foot a criminal proceeding where he believes a crime to have been committed : Cooley, Torts, 180, and the law favors honest efforts to bring the guilty to justice : McCarthy v. DeArmit, ubi supra. Hence, the test of defendant's liability to suit for malicious prosecution, must be his notice, his belief; and as the law presumes in favor of a man's honesty of purpose where the legality of his act depends upon the state of his mind, Schum v. R. R. Co., 107 Pa. 8, 12; Winlack v. Geist, 107 Pa. 297, 301; Duff v. Wilson, 72 Pa. 442, 447; Sissons v. Dixon, 5 B. & C. 785; Mead v. Conroe, 113 Pa. 220, 228, the burden of proving the contrary is upon the plaintiff, and the effect of that proof is for the jury : McCarthy v. DeArmit, ubi supra. But it is not the right of every citizen to arrest another, or to deprive him of his liberty. That right can never exist except a legal justification be shown for the act.

The presumption that men are innocent makes the treatment of them as criminals by another a prima facie wrong, and the effect of an arrest or deprivation of liberty being necessarily harmful to the person affected, and that injury following immediately from the direct agency of the defendant (and not, as in malicious prosecution, only mediately, from his remoter agency in setting the prosecution on foot), the burden, in an action for false imprisonment, of showing that it was by authority of law is cast upon the defendant: Ibid. What constitutes such authority must obviously be a question of law for the court; for the right of arrest or liability to imprisonment must be determined by a fixed and cannot be measurable by

any fluctuating standard.   Hence, while it is true that a defendant in an action for false imprisonment may justify upon like principles as protect a defendant in a suit for malicious prosecution, viz, on the ground of probable cause, Id. 71, the question of probable cause in trespass for false imprisonment is a question of law : Id. p. 70 ;—with this understanding, that, where it rests upon conflicting evidence, the existence of the facts necessary in law to constitute probable cause must be passed upon by the jury : Mitchell v. Wall, 111 Mass. 492. Neither can it be questioned, that, though the gist of the action is the unlawful detention, and therefore no malice except that which is inferable from the want of probable cause is needed to sustain it, McCarthy v. DeArmit, ubi supra, yet, where the lawfulness or unlawfulness of the detention resolves itself ultimately into a question of probable cause, neither proof by plaintiff of express malice on the part of defendant, nor disproof of it by him, is inadmissible.   Besides the fact that the former goes to secure, the latter to prevent, punitive damages, Id. p. 72 ; Neall v. Hart, 115 Pa. 347 ; Comer v. Knowles, 17 Kan. 436, the plaintiff may, in his evidence, anticipate the defense of probable cause and absence of malice by showing the absence of the one and the existence of the other.

"There can be no doubt that an alderman illegally ordering or causing a person to be arrested may be made liable in an action for damages : McCarthy v. DeArmit, ubi supra; Neall v. Hart, supra.   It is equally certain that his refusal to accept bail where the offense charged is bailable constitutes a wrong for which the injured party may have redress against him. The right to be admitted to bail in such cases is absolutely secured to an accused person by the constitution of this state : Art. 1. sec. 14.   'It is clearly agreed to be an offense by the common law as well as by statute, and punishable by indictment as well as by action, to deny, or delay, or obstruct bail where it ought to be granted:' Bac. Abr. 596 (I).   To refuse bail, when the party ought to be bailed (the party offering the same), is a misdemeanor, punishable not only at the suit of the party, but also by indictment: 1 McKinney's Justice, (4th ed.), 258 (cit. 2 Hawk., 8th ed. 141).   It is a misdemeanor at common law, as an offense against the liberty of the subject, and an action lies at the suit of the party wrongfully

imprisoned: Ibid. (cit. 1 Chitty's Crim. L. p. 103). 'So, also, to refuse bail, or unduly delay granting it, where a right to it exists, is an offense against the liberty of the subject, both at common law and by statute, punishable by civil action, or by indictment, or both:' Rapalje Crim. Procedure, sec. 41 (citing a number of authorities). Whilst, however, the action for an arrest, originally illegal and void, because of a failure of jurisdiction on the facts, was at common law an action of trespass, Maher v. Ashmead, 30 Pa. 344; Baird v. Householder, 32 Pa. 168; Kramer v. Lott, 50 Pa. 495, the proper proceeding for the recovery of damages for a mere refusal to admit to bail was necessarily an action upon the case, Gibbs v. Randlett, 58 N. H. 407, because a mere neglect to do what another has a right to exact, or any other mere nonfeasance does not constitute a trespass: Averill v. Smith, 17 Wall. (U. S.) 82, 91; Smith v. Rutherford, 2 S. & R. 358, 359; McKinney v. Reader, 6 W. 34, 41; and cannot, therefore, make one a trespasser ab initio: Averill v. Smith, supra; Richards v. McGrath, 100 Pa. 389, 399. But where there is more than a mere nonfeasance; where there is, connected with it, a positive wrongful act, in such a way as to make the omission of one thing but a constituent part of the commission of another, merging the former in the latter, I think the rule must be different. Thus, the lodging of an accused person in prison is not, strictly speaking, by virtue of the original warrant of arrest, which simply orders the constable to bring the accused before the magistrate to answer and be dealt with according to law, 1 McKinney's Justice, pp. 187, 188, but by virtue of another order, or commitment, written or verbal, issued by the magistrate after the prisoner has been brought before and examined by him: Id. 232, 233. If, then, the magistrate, in violation of his duty to accept bail offered and thereupon to set the prisoner at large, causes him to be removed in custody of a constable from his office to the prison, such performance constitutes a new and distinct wrong, an illegal act, not merely an illegal omission, and that act, involving positive constraint applied by the magistrate to the prisoner, compelling him to do something and not merely to refrain from doing something, constitutes a trespass, an imprisonment, though there may have been no physical contact and no actual violence: See Cooley, Torts, 170

Brushaber v. Stegeman, 22 Mich. 266. There is no similarity between such a case and an unavoidable delay in taking bail, which has been held not to constitute a false imprisonment, Cargill v. State, 8 Tex. App. 431, or a mere refusal to discharge upon bail one already confined in prison, or one taken by a sheriff upon a warrant itself authorizing his confinement in prison, as in Gibbe v. Rundlett, supra. Neither does the refusal of bail constitute an abuse or misuse of the original process.

"*Abuse* of process is the employment of it for an unlawful object, a perversion of it, e. g., to extort money, to compel the surrender of a deed or other thing of value, or the like; and *misuse*, simply a malicious use of it where no object is contemplated to be gained by it other than its proper effect and execution: Mayer v. Walter, 64 Pa. 283, 285, 286, the common law remedy for either being, not trespass, but case: See Ibid., and Maher v. Ashmead, supra. But it can scarcely be said with propriety that the refusal to take bail, upon the return of the original process by a production of the prisoner before the magistrate, and the unlawful incarceration of him thereafter by virtue of a new and unwarranted order, is any kind of use of the original process. It is an independent act in excess of authority, and itself the ground of an action of trespass. Yet it is but a step in, and so connected with the whole proceeding, including the issuing of the original warrant, the arrest, and the commitment to prison, as to have the effect of rendering the whole, if otherwise legal, unlawful.

"This conclusion seems to be admitted as correct by the Supreme Court of Oregon in the recent case of Nemitz v. Conrad, 29 Pac. Rep. 548, (though it was there held that, upon a complaint setting up merely an original illegal arrest not sustained by the evidence, there could be no recovery for an arrest rendered illegal by subsequent refusal of bail), and would appear to be supported by principle. It is laid down generally, that if, after execution of civil or criminal process, the person served is subjected to unwarrantable treatment, he has a remedy by action against the officer and against others who may unite with him in doing the wrong: Wood v. Graves, 144 Mass. 365–367. The liability of the person directly executing or causing the execution of the process and also perpe-

trating the wrong in connection with, but subsequently to it, is predicated upon the doctrine that, by that wrong, the whole transaction of which it forms a part becomes unlawful and the actor in it a trespasser ab initio. Such, for instance, is the status of an officer who stays too long in a store where he has attached goods: Rowley v. Rice, 11 Met. (Mass.) 337 ; Williams v. Powell, 101 Mass. 467 ; Davis v. Stone, 120 Mass. 228 ; who keeps a keeper too long in possession of attached property : Cutter v. Howe, 122 Mass. 541 ; or who places in a dwelling an unfit person as a keeper against the owner's remonstrance : Malcom v. Spoor, 12 Met. (Mass.) 179. Such is the position of a landlord, who, having made a lawful levy under a landlord's warrant, makes a premature and therefore unlawful appraisement : Brisben v. Wilson, 60 Pa. 452, or sells without notice or appraisement : Kerr v. Sharp, 14 S. & R. 399. Such again was held to be the position of the defendant in Baldwin v. Weed, 17 Wend. (N. Y.) 224, under facts very instructive here. The plaintiff sued for malicious prosecution. It appeared that he had been indicted in New York, arrested in Vermont upon a requisition procured by defendant, and brought back to New York. But the defendant, who was present at the arrest, had caused the plaintiff to be put in irons, with the purpose and effect of forcing him to pay two small debts owing the defendant. It was held that the action ought to have been trespass for false imprisonment and assault. It has been seen that the common law remedy for abuse of process is not trespass, but case. But one, who by reason of subsequent wrong becomes a trespasser ab initio is suable in trespass : Kerr v. Sharp, supra, 402. The inference is, that the unwarrantable act of the defendant in Baldwin v. Weed, supra, in causing defendant to be put in irons was deemed to render him a trespasser ab initio, and the ruling is treated as so deciding in Wood v. Graves, supra.

"It follows, therefore, that, whether an alderman be charged with false imprisonment by reason of the want of the requisite jurisdictional facts to support the original arrest, or by reason of a commitment of plaintiff to prison in violation of his right and in disregard of his offer of bail, the form of the action, at common law, would be trespass and the measure of damage would be the same ; that, where the allegation of false impris-

onment is based upon both of these charges, proof of either must entitle the plaintiff to recover; and that an instruction to that effect cannot be erroneous, if the proofs and pleadings warrant it. A fortiori must this be so, where, as here, the action is not the common law action of trespass, but the action of trespass as created by the practice act of May 25, 1887, P. L. 271,—simply an action ex delicto, which embraces the common law actions of trespass and case.

"But it is urged that the plaintiff's statement complains of illegality only in the original arrest, and that, therefore, the instruction allowing a recovery upon proof of either its original illegality or of the refusal to take bail, was error, in that it introduced as a basis of recovery a cause of action not contained in the pleadings. Granted that, as I have endeavored to show, the commitment in denial of bail vitiated the whole pleadings ab initio, then it is clear that a suit thus grounded must be for false imprisonment beginning with the original arrest, and therefore there can be no question of the introduction of a new cause of action by giving that circumstance its legitimate effect, where the suit is, in fact, brought for false imprisonment in the original arrest and in the subsequent incarceration. If the court is to exercise its ingenuity in criticising the statement, it is its duty, as was said in Smith v. Rutherford, 2 S. & R. 358, 359, to support the verdict, if possible, the cause having been tried on its merits.

"The statement here filed sets forth as grounds of complaint the wrongs inflicted by defendant upon plaintiff, both in the original arrest and in the subsequent confinement in prison. It is true, it does not explicitly aver wherein the distinctive illegality of the latter consisted—does not recite the specific fact of the defendant's refusal to accept bail. But that fact appeared by evidence admitted, as I find, without any such objection as is now raised, and the issue concerning it was actually tried by the jury. If, therefore, the statement was defective in this particular, that would constitute no ground for making these rules absolute, but, under act March 14, 1872, P. L. 25, 1 Purd. 94, pl. 7, the statement would still be amendable before entry of judgment, so as to 'conform to what was tried before the jury and found by the verdict:' Bolton v. King, 105 Pa. 78, 83; or perhaps the defect is to be deemed cured by the ver-

dict, under the rule laid down in Weinberger v. Shelly, 6 W. & S. 336 ; Corson v. Hunt, 14 Pa. 510 ; Leckey v. Bloser, 24 Pa. 401 ; Quick v. Miller, 103 Pa. 67 ; McLenehan v. Andrews, 135 Pa. 383, and a multitude of other cases. Of course, the motion for a compulsory nonsuit made by defendant at the close of plaintiff's testimony, not specifically directed to this objection, but assuming that no cause of action whatever had been shown, cannot stand in the way of an application of either of these principles. Either is decisive against setting aside this verdict or arresting judgment upon it on the ground I have just discussed.

" The bearing of what has been said upon the principal reasons urged in support of these rules is so obvious that I shall not trouble myself to point it out in detail. The remaining objections may be briefly noticed.

" That the evidence of the plaintiff, if believed, warranted a finding against the defendant because of the illegality of the original arrest can scarcely be seriously disputed. Nor do I think that defendant was injured by the manner in which the question of his liability upon this branch of the case was submitted to the jury. The arrest was made upon a charge of barratry, the crime of being a common barrator. In order to make out that crime, it is generally conceded there must be proof of at least three instances of offending, 2 Whart. Crim. L. sec. 1444, note; 1 Bish. Cr. L. sec. 65, 3 ; 1 Russ. Cr. 266, note,—though some authorities deem that number insufficient. In this case, there is no pretense that plaintiff had brought more than two prosecutions. There was, therefore, no crime to give the defendant as alderman jurisdiction to issue his warrant. His only chance of escape, then, lay in the answer to the question whether or not he had probable cause for acting as he did. Probable cause is a reasonable ground for belief of guilt, honestly entertained, without regard to what induced the belief, if it be reasonably sufficient: Smith v. Ege, 52 Pa. 419, 421, 422. Of course, if it was true, as plaintiff endeavored to show, that the defendant was the mover and instigator of the prosecution against the plaintiff, being himself either aware of its baselessness in fact and in law or having no reason beyond his own full knowledge of the circumstances for believing the plaintiff guilty, he could not pretend to have had probable cause. If, on the other hand,

as he contended, he got information from his constable, which, however erroneous it may have been, he honestly believed to point to plaintiff's guilt, and directed the prosecution and issued his warrant on the strength thereof, he was protected by the rule of probable cause: Ibid.   Whether, under the conflicting testimony, the former or the latter allegation was to be deemed sustained, was for the jury.   The defendant got all he could ask when they were told that, if he acted upon (the very words used by STRONG, J., in Smith v. Ege, supra, at p. 422, in stating the test of liability) information received from his constable, honestly believing it to be likely to be true, he was justified in the eyes of the law.   They were not told that his ignorance of the law as to what constitutes barratry could not be considered as aiding the probability or reasonableness of his alleged belief in the existence of a cause of prosecution against plaintiff.   It has been said, that, where one, in ignorance of the law, causes the unlawful arrest of another, the offense is not the same, nor his liability so great, as though he knew the arrest to be unlawful and acted in defiance of the law: Hill v. Taylor, 50 Mich. 549.   Whether this be strictly accurate or not, if there was anything wrong in the omission, the defendant has no reason to complain of it.

" The evidence concerning what took place at the trial of the plaintiff, showing the circumstances of his acquittal, was clearly proper.   It was decided in Brant v. Higgins, 10 Mo. 728, that, in an action for a malicious arrest, the verdict in the case in which the arrest was made was competent evidence, though slight, to show want of probable cause,—its weight depending upon the circumstances under which it was rendered, as if given the jury without leaving their seats, etc.

" The objection to the instructions on the matter of punitive damages, is, I think, without merit.   The allowance was made dependent upon the finding the defendant was moved to what he did by actual malice and ill will towards plaintiff, in the absence of probable cause.   This seems to be the rule as to punitive damages generally as laid down by very high authority, R. R. Co. v. Guigley, 21 How. (U. S.) 202, and in cases of this character particularly: McCarthy v. DeArmit, supra, at p. 72.   In point of fact, however, there is nothing punitive about the size of this verdict.

" If there was anything improper in the address of plaintiff's counsel to the jury, it is now too late to remedy it. I have had repeated occasion for pointing out the rule that objections of that kind must be made at the time and cannot be first brought up on an application for a new trial: Barre v. Ry. Co., C. P. Berks Co., No. 54, June T., 1889; Com. v. Buccieri, O. & T. Berks Co., No. 98, Sept. Sess., 1892; and see Moll v. Zimmerman, 1 Woodw. 501; State v. Hawkins, (Or.) 12 Crim. L., Mag. 607; State v. Turner, (S. C.) 15 S. E. Rep. 602.

" The rules to show cause are discharged."

*Errors assigned* were, among others, (2) ruling on evidence, quoting the bill of exceptions; (3, 4) instructions as above, quoting them.

*C. H. Ruhl,* of *Ermentrout & Ruhl,* for appellant.—The extra judicial remarks of the judge before whom the case of the Commonwealth v. Grohmann, the plaintiff here, was tried in the court of quarter sessions, were clearly incompetent, and should have been rejected by the court below.

An action against a magistrate for false imprisonment cannot be sustained, where the complaint upon which the accused was apprehended and imprisoned shows upon its face that he had jurisdiction of the person and offense charged : Kramer v. Lott, 50 Pa. 496; Cooley on Torts, 419; Crepps v. Durdon, 2 Smith's Leading Cases, 9 Am. ed. 1041; Neall v. Hart, 115 Pa. 352; Emerson v. Cochran, 111 Pa. 622; Mangold v. Thorpe, 33 N. J. Law Rep. 136.

*H. P. Keiser, W. B. Bcehtel* with him, for appellee.

OPINION BY MR. JUSTICE FELL, May 20, 1895:

Upon the trial of an action for false imprisonment testimony was admitted for the plaintiff to show what had been said by the trial judge in the quarter sessions in submitting the case to the jury. The offer was to prove want of probable cause, and that the prosecution was groundless. The testimony was to the effect that the judge directed a verdict of acquittal and instructed the jury to hold the prosecutor liable for costs.

It was competent for the plaintiff to prove that the prosecu-

tion was ended, and that he had been acquitted of the charge. This was properly shown by the record of the trial, and the plaintiff had the advantage of all the legal consequences of his acquittal.

A verdict of guilty is evidence of probable cause. A verdict of acquittal is evidence, though it may be slight, of the want of probable cause. Courts have differed as to the conclusive effect of a conviction. The true principle seems to be that in the trial of an action of malicious prosecution or false arrest a verdict of guilty is strong prima facie evidence of probable cause, but it may be rebutted by proof that it was obtained by corrupt or undue means : ' Munns v. DuPont, 1 Am. Leading Cases, 217. The effect to be given to a verdict of acquittal has been made to depend upon the circumstances under which it is rendered. Deliberation by the jury has been held to be evidence of probable cause. Greenleaf on Evidence, vol. 2, sec. 457. A verdict of acquittal rendered promptly and without hesitation has been decided to have additional weight as evidence of the want of probable cause. In our cases proof of a verdict of acquittal has been allowed for the purpose of showing that the prosecution was ended, and ended in favor of the plaintiff, thus establishing the right of action and the basis for recovery in damages. The result of any inquiry behind the fact of the verdict would seem to rest upon very unsatisfactory and unsafe ground. The hesitation of the jury to acquit might be evidence that there were indications of guilt, but it would be of no value unless it clearly appeared that the hesitation was upon the evidence. The prompt action of the jury upon the evidence throws no light upon the real question in issue, whether the prosecutor had reasonable cause on existing facts then known to him. The inquiry as to the probable cause goes back to the commencement of the prosecution, and it relates to the facts then known and as they then appeared. It is not confined to the truth of matters which led to the prosecution, but extends to their appearance as indicating the guilt or innocence of the accused. The jury in the criminal court deals with the question of actual guilt as it appears at the trial, not with the indications of guilt as they appeared at the time of the arrest.

The plaintiff in this case went a step further, and under objection offered testimony of what the judge said at the trial in

the quarter sessions. The remarks of the trial judge were directed to the question of actual guilt as it appeared after a full investigation and after hearing the testimony of both sides. They were based upon a state of facts different from those which led to the arrest, and related to the grounds for conviction or acquittal. We are of opinion that this testimony should have been excluded.

The second assignment of error is sustained. The remaining assignments are sufficiently answered in the able opinion of the learned judge of the common pleas.

The judgment is reversed with a venire de novo.