ERNIE MIELKE, by Theodore Mielke, His Guardian ad Litem, Respondent, v. ARTHUR RODE, Appellant.

(226 N. W. 507.)

Opinion filed July 26, 1929. Rehearing denied August 13, 1929.

*Buck & Buck,* for appellant.

*Knauf & Knauf,* for respondent.

BURR, J. On December 1st, 1927, the plaintiff was arrested on the charge of malicious mischief. The complaint was made by the defendant who charged the plaintiff with committing depredations on the farm of the defendant November 28, 1927. The hearing before the justice commenced December 1st. After some testimony was taken the hearing was continued until December 17th, and again continued till February 17th, 1928. However, on February 16th, 1928, the state's attorney moved for dismissal. The case was dismissed, and the plaintiff discharged.

The plaintiff brings this action for malicious prosecution charging that the criminal proceedings were instituted with malice and without probable cause, that he was damaged in the sum of $2,850 actual damages and further he asks $2,500 exemplary damages.

The answer admits the making of the complaint, denies any malice, alleges that defendant had every reason to believe the plaintiff was responsible for the depredations committed, that he stated to the state's attorney of Stutsman county "all of the facts here within the knowledge of the defendant herein with reference to said acts of malicious mischief, and the connection of the plaintiff herein with said acts, and that said matter was thoroughly and fully presented to the state's attorney of Stutsman county, North Dakota" and that the state's attorney "did on the 29th day of November 1927 prepare a criminal complaint

charging the plaintiff herein with malicious mischief." He then alleges that he signed the complaint and filed it with the justice of the peace and that he acted upon the advice of the state's attorney, "after he had fully and fairly stated·all of the facts known to the defendant with reference to said matter."

The jury returned a verdict for the plaintiff for $900 actual damages, and $100 exemplary damages. The defendant moved for judgment notwithstanding the verdict or for a new trial and on this being denied he appeals to this court.

The specifications of error on appeal contain objections to certain rulings of the court in the admission of evidence, an exception to one portion of the charge to the jury, and allegations of error for failure to grant judgment notwithstanding the verdict.

In his brief the appellant says the issues of the case are:

"Whether or not the defendant, Arthur Rode, acted without malice and with probable cause in going to the state's attorney and asking for advice."

"Whether or not Arthur Rode stated to the state's attorney all of the facts as he knew them, or all of the facts, which he, acting as a reasonable man should have told under the circumstances."

"Whether or not the defendant, Arthur Rode, acted in good faith and without malice in following the advice of the state's attorney in causing the arrest of the plaintiff, Ernie Mielke."

It is conceded that if the defendant made a full, fair and complete disclosure to the state's attorney of all the material facts within his knowledge, and of all facts which he had reasonable ground to believe existed at the time of making the statement, including facts which he could have ascertained by reasonable diligence, and then was advised by the state's attorney to make the complaint, this would be a complete defense. There is some diversity of opinion among the different jurisdictions regarding the extent of the disclosures which the complaining witness must make. Some courts hold that it is not necessary for him to disclose more than the facts which are within his knowledge. See Holliday v. Holliday, 123 Cal. 26, 55 Pac. 703; King v. Apple River Power Co. 131 Wis. 575, 120 Am. St. Rep. 1063, 111 N. W. 666, 11 Ann. Cas. 951. But in this jurisdiction the rule is as stated in Shong v. Stinchfield, 47 N. D. 495, 183 N. W. 268: "One seeking to rely

upon the advice of counsel as a defense in an action for malicious prosecution must show that he communicated to such counsel all of the facts within his knowledge and all that he could ascertain with reasonable diligence and inquiry and that he acted on the advice received honestly and in good faith in causing the arrest." See also Merchant v. Pielke, 10 N. D. 48, 84 N. W. 574.

According to the record the facts which the defendant related to the state's attorney are briefly; that during the early fall of 1927 a series of depredations took place on the farm home of the defendant—the fences were cut in various places, machinery taken apart and overturned, holes made in the granary permitting the grain to escape, gasoline engine sanded, water put in the gasoline, cattle cut loose from the stalls, ropes and harness straps cut; dirt and gravel placed in the cylinder head of his automobile and other acts of like nature; that this happened is borne out by the testimony of the defendant, his wife, his son Albert, and his two brothers-in-law. Defendant set watch, consulted his relatives and attempted to ascertain the perpetrator. About six o'clock on the evening of November 28th, the son Albert, a boy of about sixteen, came into the house stating he had seen the plaintiff near the west granary and that this plaintiff had run away through the woods toward the road; almost immediately afterwards two smaller children came in stating they had seen the lights of a car parked on the highway; shortly after a brother-in-law arrived and went with the son to the west granary finding tracks around the granary and from there to the well and to the machinery, finding both well and machinery interfered with; from there the tracks went through the woods. The tracks were followed to a point on the highway where it was found that a car had been parked. The defendant sent his son over to the home of John Rode the defendant's brother on some errand. The son returned stating that he saw the Mielke boys there, and that they told him they were returning gasoline which they had borrowed. The defendant, his brother-in-law and his son then went to John Rode's place and found the Mielke boys there. Some conversation took place between them in regard to this gasoline which was being returned and the Mielke boys told them they were not returning gasoline, never had borrowed any, and had not told Albert they were returning gasoline. Mrs. John Rode testifies they did not return any gasoline. The record shows that

all of these facts were disclosed to the state's attorney except the conversation about returning the gasoline. The state's attorney testifies that the defendant so stated and defendant testified he so told the state's attorney.

There is no contention on the part of the plaintiff that the defendant knew anything else about the case than what is stated; there is no claim the defendant suppressed any fact which he knew except the conversation regarding the gasoline. The state's attorney testifies that he advised the defendant to make complaint. The record shows the state's attorney prepared the complaint and the defendant signed it.

At the time of these depredations the plaintiff was nineteen years of age. It appears that several years before there was some dispute between the defendant and the plaintiff when they were hauling grain to a threshing machine, over an incident which resulted in the plaintiff being compelled to take the "dirty side" of the machine in pitching. The plaintiff says, the defendant, at that time, threatened to "get even" with him; and the defendant says it was the plaintiff who threatened to "get even." Other than this incident nothing is shown by either side which would tend to show any difficulty between the plaintiff and defendant, or between the families of either.

From the record it is clear that depredations were committed on the defendant's farm. The defendant had consulted with his friends and relatives in an endeavor to discover the perpetrator and watch was set, but it was not until the evening of November 28th, the defendant learned anything which might tend to fix the blame on any one or suggest that plaintiff was guilty of the acts. There cannot be any question about the good faith of the defendant in his visit to the state's attorney, and the record shows that at that time he disclosed to the officer everything he knew or could have known regarding these depredations, and whatever connection the plaintiff might have had with them. The failure to disclose to the state's attorney this conversation regarding the gasoline is not sufficient to take to the jury the question of whether the defendant made a full and complete disclosure of all of the facts. The facts which the complainant is required to disclose to the state's attorney are material facts,—that is facts material to the alleged crime charged, facts which would have a tendency to throw light upon whether any malicious mischief was in fact committed and who in all proba-

bility committed them. See Dyer v. Singer Sewing Mach. Co. 164 Ky. 538, 175 S. W. 1037; Main v. Healy, 100 Wash. 253, 170 Pac. 570; Smith v. Federal Rubber Co. 170 Wis. 497, 175 N. W. 808. Immaterial facts need not be stated. The plaintiff contends that the conversation regarding the return of the gasoline would show that Albert was not telling the truth and as the father relied on the statement of Albert as to the presence of the plaintiff he should have told the state's attorney this so the state's attorney could have determined the value to be placed on Albert's testimony. But this was a matter outside of the crime charged. The father was as likely to believe his son's version as the version of the one whom he was led to believe was guilty of the malicious mischief. Doubtless the father believed what Albert said regarding the presence of Ernie near the granary on the night of November 28th; but a prosecutor is not precluded from relying on what he was told, nor need he know of his own knowledge that the plaintiff did the acts charged. Shafer v. Hertzig, 92 Minn. 171, 174, 99 N. W. 796.

It is true the record in this case shows an alibi for the plaintiff. His father and his brother testified that this brother and the plaintiff were hauling straw all that afternoon and the record shows the mother was in town with the only car which was available, that she came home about 6 o'cock P. M. and found the boys unloading straw, that they had supper and shortly after the latter took the car to go in search of one Fred Schantzman to get him to help them in some corn husking. That the plaintiff and his brother went to the home of one McCleary looking for this Schantzman, and McCleary testified to this also. Then they went to the Schantzman place. This is verified by a brother of Schantzman. They were told Schantzman was at the John Rode farm and they went there and found him. This is corroborated by John Rode, and his wife. However the probable cause which the defendant must have as a basis for the commencement of the prosecution must, of course, depend upon what he knew or should have known at the time the prosecution was commenced. See Thompson v. Beacon Valley Rubber Co. 56 Conn. 493, 16 Atl. 557; Grohmann v. Kirschman, 168 Pa. 189, 32 Atl. 32, 37. All of this took place from some time early in the afternoon till about half past eight in the evening but this was unknown to the defendant at the time he made his statement to the

state's attorney and there is no claim made that he could have found this out or have reason to know it.

It is the claim of the plaintiff however, that in addition to the failure to disclose to the state's attorney this conversation regarding the gasoline there was an incident which occurred during the time of the hearing on the criminal charge. At the hearing before the justice of the peace the plaintiff herein, the defendant in the criminal proceedings, produced a witness who testified that during the time of the hearing he heard the defendant say to his son "You say that you 'say' (saw) Ernie." That the son replied "I can't swear to that" and the defendant answered "You will have to." This was denied by the son and by the defendant but in any event was something which took place after the prosecution had been instituted, and could not have been reported to the state's attorney. It is the claim that this incident showed the animus of the defendant. There is nothing in the testimony which would indicate when the son was supposed to have seen Ernie—whether while at the granary, at his uncle's place or at times when the plaintiff claimed he was away from the neighborhood. After the defendant had shown the approximate time when some of the acts of depredation was being committed the plaintiff testified he was not in that part of the state at that particular time and therefore could not have committed them. Plaintiff suggests the inference that he was referring to seeing him at the granary on the evening of the 28th of November. It might have referred to that time or any other time. There is nothing in the record to show to what they were referring. The father and son deny having the conversation at all. True, this was a conflict of testimony between witnesses for the plaintiff and witnesses for the defendant and if the matter at hearing of the case could go to the jury for their determination it might have some bearing upon the veracity of Albert who testified positively he saw the plaintiff at the granary on the evening of the 28th of November, provided they believed the conversation took place and it was shown that this alleged conversation was referring to that instance. The record is silent in this respect, and in any event it could have a bearing on malice, only.

Even if the plaintiff were not guilty of the malicious mischief charged, commencing of the prosecution in itself was not necessarily a wrong. A prosecutor is not an insurer of the case to the state. The

law favors the prosecution of crimes and as shown in Shafer v. Hertzig, supra, affords protection to a citizen prosecuting another in good faith and on reasonable grounds.

As said in Thompson v. Beacon Valley Rubber Co. supra, "The law is interested in having offenders prosecuted and punished." (16 Atl. 557) and as shown in Grohmann v. Kirschman, supra, "it is the lawful duty of every citizen to set on foot a criminal proceeding where he believes a crime to have been committed, and the law favors honest efforts to bring the guilty to justice." See also McCarthy v. DeArmit, 99 Pa. 63, 69. It is essential to public justice that there be some such immunity. A man complaining of injuries to his property which constituted malicious mischief cannot be expected to act without prejudice to a certain extent, and should not be required to have the detached and lofty attitude of judicial examination when he prefers charges against a person. If he tells the truth regarding the injuries and states to the state's attorney whose duty it is to prosecute offenses all the facts regarding the accused of which he has knowledge, and should know, and the sources of his information and makes a full and complete disclosure he cannot be charged with damages because the state fails to furnish sufficient proof to hold the alleged culprit or that the subsequent investigation shows the accused was not guilty.

The rule is that "whether a prosecution was malicious is ordinarily a question of fact to be determined by the jury;" but if defendant had probable cause for instituting the criminal proceedings then malice is not material. It is true an attempt was made to show that there was malice on the part of the defendant, independent of probable cause as illustrated by the threshing machine incident referred to. However vague and indefinite such incident was the testimony regarding the same is not sufficient even if it proved malice; for "no amount of malice alone, however great, will sustain the action if want of probable cause is not shown." See Kolka v. Jones, 6 N. D. 461, 66 Am. St. Rep. 615, 71 N. W. 558; Lacey v. Porter, 103 Cal. 597, 37 Pac. 635; Staunton v. Goshorn, 36 C. C. A. 75, 94 Fed. 52. As said in Price v. Morris, 122 Ark. 382, 290, 183 S. W. 180, "In an action for a malicious prosecution, if probable cause is found to exist, no amount of malice will entitle a plaintiff to a verdict." Even if malice be shown want of probable cause is not inferred from malice. Brown v. Sel-

fridge, 224 U. S. 189, 56 L. ed. 727, 32 Sup. Ct. Rep. 444. Malice may be inferred from the want of probable cause; but if there be probable cause then the presence or absence of malice is immaterial. If there be legal justification for the act done it cannot be said that the action was commenced maliciously as to justify a recovery for malicious prosecution. The rule stated in 18 R. C. L. 33,—"If probable cause exists, it is an absolute protection against an action for malicious prosecution even if express malice is proved" is the rule applicable here. See also 38 C. J. 402.

When undisputed facts show in themselves probable cause for the commencement of the prosecution then it is a matter of law. While it is a rule that whether a prosecution was malicious is one of fact to be determined by the jury, yet when there are no facts to submit to the jury showing want of probable cause, but on the contrary the undisputed facts show probable cause, the plaintiff cannot recover for "probable cause is a question of law when the facts are undisputed." See Comeford v. Morwood, 34 N. D. 276, 158 N. W. 258; Kolka v. Jones, supra; Lacey v. Porter, 103 Cal. 597, 37 Pac. 635; Brown v. Selfridge, supra. In this later case the Supreme Court of the United States says: "In clear cases the question of want of probable cause for instituting prosecution is one of law for the Court." The burden of proof is upon the plaintiff to show want of probable cause. Brown v. Selfridge, supra. Though negative in form it is an essential element of the action and must be alleged and proved by plaintiff. See 38 C. J. 476, and cases cited.

Plaintiff's failure to prove want of probable cause entitled the defendant to judgment notwithstanding the verdict. The judgment of the lower court is reversed and judgment of dismissal ordered for the defendant.

BURKE, Ch. J., and NUESSLE, BIRDZELL, and CHRISTIANSON, JJ., concur.