Anthony J. SCHMIDT, Plaintiff
and Respondent,

v.

Leonard LEBEN and Bismarck Super Mar-
ket, a corporation, Defendants
and Appellants.

Civ. No. 8568.

Supreme Court of North Dakota.

March 10, 1971.

Pearce, Engebretson, Anderson, Schmidt & Thames, Bismarck, for defendants-appellants.

Floyd B. Sperry, Bismarck, for plaintiff-respondent.

KNUDSON, Judge.

This is an action for damages for malicious prosecution, the plaintiff charging that the criminal proceedings were instituted without probable cause and with malice; that he was damaged in the sum of $2,000 actual damages; and for the further sum of $5,000 punitive damages.

The defendants answered jointly, and except for admitting the corporate capacity of the defendant Bismarck Super Market and that Leonard Leben was the manager, as alleged, and admitting to making the complaint, they denied having acted at any time without probable cause and with malice, and denied all other allegations.

The case was tried to the court, who found for the plaintiff in the sum of $2,-500 actual damages and $2,500 exemplary damages, for a total judgment of $5,089.30, with costs, and judgment was entered thereon, from which judgment this appeal is taken.

It appears that a check in the amount of $20.00, drawn on the First National Bank of Mandan and signed by one A. J. Schmidt, was given to the defendant store. This check, with other checks, was deposited by the defendant Super Market and in due course was returned by the Mandan bank marked "No Account." The defendant's manager, Leben, searched the Bismarck and Mandan telephone books for the telephone number of an A. J. Schmidt and found such a number listed at an address in Bismarck, North Dakota. Mr. Leben called that number and was informed that it was the home of A. J. Schmidt, a former Land Commissioner of the state of North Dakota who was now, and had been for some time, deceased. About two weeks later Mr. Leben took the check to the Burleigh County State's Attorney's office and informed the assistant state's attorney that his store had received this check, that it had been deposited and duly presented for payment and that it was returned marked "No Account," and that he had found a number for one A. J. Schmidt in the Bismarck telephone book, that he had called the number and found that the A. J. Schmidt there listed in the telephone book had been dead for some time. The assistant state's attorney advised him—or suggested—that he sign a complaint against A. J. Schmidt for the issuance of a check without sufficient funds or issuing a check with no account. The complaint was prepared, and Mr. Leben signed the complaint, which was presented to the Judge of the County Court of Increased Jurisdiction of Burleigh County, who issued a warrant for the arrest of one A. J. Schmidt. The Burleigh County sheriff testified that the warrant was sent to the office of the Cass County sheriff. A letter from the Cass County sheriff was admitted into evidence wherein he said that he received the warrant of arrest with a note attached thereto with the information as to where the accused lived, for whom he worked, the kind of work he did, and from where he had come. Apparently this information related to one Anthony J. Schmidt who lived in West Fargo, North Dakota, and worked for the Bureau of Reclamation. Two deputy sheriffs of Cass County went to the home of Anthony J. Schmidt in West Fargo and found neither Anthony J. Schmidt nor his wife at home. The deputy sheriffs inquired of the neighbors as to the where-

abouts of Anthony J. Schmidt. Later on that afternoon of that day, at about three o'clock, Anthony J. Schmidt and his wife returned to their home and they were informed by a neighbor that the sheriff's office had made inquiry for them. He then called the Cass County sheriff's office to inquire of them why they had called at his home. He was informed that they had a warrant for his arrest for issuing a no-account check. They asked him for whom he worked. He told them he worked for the Bureau of Reclamation. Two deputy sheriffs then called at his home and he was taken to the office of the Cass County sheriff and was released about three hours later upon posting a hundred fifty dollar bail. Upon his release, about 6:00 p. m., he departed for Bismarck where he arrived later on that evening. The next morning he, with the supervisor from his employing agency, called upon an attorney in Bismarck, who phoned the assistant state's attorney to inform him that they had arrested the wrong man. Anthony J. Schmidt went to the Burleigh County sheriff's office in Bismarck, and also to the state's attorney's office, and after comparing the signatures he convinced the officials that he was not the man they wanted and they agreed to dismiss the complaint as to him. The testimony is rather vague whether or not the state's attorney or the sheriff called Mr. Leben to come over and identify Anthony J. Schmidt. The assistant state's attorney could not recall such a telephone conversation. Anthony J. Schmidt testified that such a telephone call was made by the assistant state's attorney and that Mr. Leben had refused to come over to identify him as he said he could not identify Anthony J. Schmidt as the person who had signed the check as A. J. Schmidt.

Mr. Leben testified that the assistant state's attorney called him to come to the sheriff's office to identify one Anthony J. Schmidt as the person who issued the check as A. J. Schmidt. He testified that he did not know what to do because ordinarily each cashier, when taking a check, places the cashier's identification number on the check, but on this check there was no identification number and, consequently, he did not know which cashier had taken the check and, therefore, he had no one to identify the person who had given the check. Accordingly, Mr. Leben declined to go to the sheriff's office.

About two or three weeks after his arrest, Anthony J. Schmidt and an attorney, Mr. Beeks, called at the Bismarck Super Market and inquired of Mr. Leben how information had been obtained regarding Anthony J. Schmidt that caused him to be suspected and arrested for issuing the no-account check. Mr. Leben replied that he had signed the complaint against the person whose signature appeared on the check. Mr. Leben testified that Mr. Rockstad, one of the officers of the Super Market, was also present at this conference, and stated that they hadn't picked on anyone in particular, that they were sorry it happened, and that if Mr. Schmidt had any complaint or wanted any recourse he should see the lawyers for the Super Market. Mr. Leben further stated that he had no reason to believe that Anthony J. Schmidt, the plaintiff in the case, was the person who gave the check, nor did he have him in mind at the time he signed the complaint. He stated that when Anthony J. Schmidt appeared with Mr. Beeks he recognized him as having been a customer in the store, but that he was not familiar with him as to name and was not aware he had left Bismarck.

The appellant raises two issues: One, whether the criminal action commenced against one A. J. Schmidt was instituted with probable cause and without malice; two, whether the plaintiff Anthony J. Schmidt incurred any damage due to any unlawful act of the defendants.

We will consider the first issue—whether the criminal action commenced against one A. J. Schmidt was instituted with probable cause and without malice.

We said in Mielke v. Rode, 58 N.D. 465, 226 N.W. 507 (1929) that in an action for malicious prosecution the burden of proof is upon the plaintiff to show want of probable cause on the part of the defendant for instituting the proceedings complained of. We also held in that case that where a person, contemplating criminal proceedings against another, makes to the state's attorney of the county a full, fair, and complete statement of all the facts within his knowledge, and which he should have known regarding the criminal acts charged and the complicity of the suspected party therein, and is advised by said official to commence criminal prosecution, such statement and advice constitute a complete defense to an action for malicious prosecution because of the commencement of such criminal proceedings.

The rule is that if the defendant had probable cause for instituting criminal proceedings, then malice is not material.

Where a person has probable cause for instituting criminal proceedings against another, it is immaterial that he is actuated by a malicious motive.

Mielke v. Rode, *supra,* Syllabus ¶ 4.

It is well settled that a plaintiff suing for malicious prosecution must prove both want of probable cause and malice.

The plaintiff in an action for malicious prosecution must prove both want of probable cause and malice on the part of the one instituting the criminal proceedings. He cannot recover if either be lacking.

Mielke v. Rode, *supra,* Syllabus ¶ 5.

While malice may be inferred from the want of probable cause, want of probable cause is not inferred from malice.

Mielke v. Rode, *supra,* Syllabus ¶ 6.

When the appellant demands a trial de novo on appeal, the supreme court must try the case anew and determine the facts for itself. Knauss v. Miles Homes, Inc., 173 N.W.2d 896 (N.D.1969).

And when an appeal is taken from a judgment in an action tried without a jury and appellant demands a trial de novo the supreme court will try the case anew, giving appreciable weight to the trial court's findings. Matteson v. Polanchek, 164 N.W.2d 54 (N.D.1969).

In this case the appellants have demanded a trial de novo, and we will proceed to determine the facts from the evidence adduced.

First, we will examine the evidence to determine whether or not the plaintiff has met his burden of proving both want of probable cause and malice on the part of the defendants in instituting the criminal proceedings.

The defendants received a check from a person who signed his name thereto as A. J. Schmidt. This check was presented in due course to the drawee bank, which check was returned to the defendants with a notation indicating thereon that A. J. Schmidt had no account in that bank. The defendants then examined the Bismarck and Mandan telephone books and found an A. J. Schmidt listed therein, and upon calling that number found that the A. J. Schmidt listed in the telephone book was a former Land Commissioner who is now deceased, and that therefore he could not have been the person who signed the check. Several days later the defendants took the check to the state's attorney, and after consultation with the assistant state's attorney signed a complaint charging one A. J. Schmidt with the crime of issuing a check with no account. It is quite clear from the evidence that Mr. Leben had no idea who A. J. Schmidt might be. A few days later Anthony J. Schmidt was arrested at his home in West Fargo, North Dakota, by the sheriff of Cass County upon the warrant of arrest issued by the County Court of Increased Jurisdiction in Burleigh County for the arrest of one A. J. Schmidt. As we

said before, a note was attached to the warrant indicating that the A. J. Schmidt for whom the warrant of arrest was issued lived in West Fargo and was employed by the Bureau of Reclamation, which information fitted Anthony J. Schmidt. We do not find any evidence linking Mr. Leben with the arrest of Anthony J. Schmidt of West Fargo, North Dakota. The sheriff of Burleigh County testified that the information attached to the note on the warrant of arrest was received by him from the state's attorney's office. The state's attorney testified that he could not remember giving such information to the sheriff, and that if he had given such information to the sheriff, he would have had a copy thereof in his files, and that upon an examination of his files he had found no copy of any such information. Neither the sheriff, who had never consulted with Mr. Leben, nor the assistant state's attorney, who had prepared the criminal complaint which Mr. Leben signed, testified that they had received any information from Mr. Leben as to who the person might be who signed the check. In fact, Mr. Leben testified that at the time he signed the complaint he did not have in mind one Anthony J. Schmidt who had been a former customer of the store during the several years that Anthony J. Schmidt lived in Bismarck; and while this may be a self-serving statement there is no testimony or evidence in the record to indicate that Mr. Leben had Mr. Anthony J. Schmidt in mind at the time he signed the warrant for the arrest of one A. J. Schmidt. The fact that after the arrest, when Mr. Anthony J. Schmidt came to the store with an attorney to inquire about why he had signed the warrant of arrest, he did recognize Mr. Anthony J. Schmidt as the person who had formerly traded at the store in prior years, but it appears that neither Mr. Leben nor Anthony J. Schmidt knew each other personally except that one knew the other as a customer and Anthony J. Schmidt knew Leben as the manager of the store.

In the case before us, it appears that all the proceedings for the arrest and apprehension of the plaintiff herein were handled by the regular and duly constituted law enforcing officers. There is no evidence here that Mr. Leben or the officers of the company participated at all in the arrest of plaintiff.

In this case Anthony J. Schmidt and A. J. Schmidt actually are different individuals. There has been a mistake as to identity committed here, but the record does not support any action by Anthony J. Schmidt against the defendants.

In Nicholson v. Roop, N.D., 62 N.W.2d 473, 485, we said:

In Miller v. Fano, 134 Cal. 103, 107, 66 P. 183, 184, being one of the cases cited in the foregoing quotation, the court said: "It would be a hard and unjust law that would hold a party responsible in damages for false imprisonment for an honest mistake as to the identity of a party." In Turner v. Mellon, 41 Cal.2d 45, 257 P.2d 15, 17, a case of false imprisonment, the Supreme Court of California said:

"All that Mellon did here was to report the commission of the crimes and state to the police officers his honest but mistaken opinion that plaintiff was the robber. This conduct did not in law amount to taking 'some active part in bringing about the unlawful arrest,' and since Mellon did not participate in the false imprisonment neither he nor his employer, whose only liability would necessarily rest on the doctrine of *respondeat superior,* is liable therefor."

The plaintiff Anthony J. Schmidt has failed to prove want of probable cause and malice. The judgment of the trial court is reversed and judgment of dismissal is ordered for the defendants Leonard Leben and Bismarck Super Market, a corporation.

STRUTZ, C. J., and TEIGEN, ERICKSTAD and PAULSON, JJ., concur.