**NICHOLSON v. ROOP et al.**

No. 7385.

Supreme Court of North Dakota.

Feb. 4, 1954.

W. J. Austin, Bismarck, for plaintiff and appellant.

Cox, Cox, Pearce & Engebretson, Bismarck, for defendants and respondents.

NELSON, District Judge.

Plaintiff brings this action for damages for malicious prosecution. In his complaint, after alleging the corporate capacity of defendant bank and that defendant Roop was, at all of the times material here, its vice-president, he alleges that because of the acts of the defendants a complaint charging him with the crime of obtaining money by false pretenses was filed with a justice of the peace of Burleigh County, North Dakota; that under the warrant issued thereon he was brought before said justice and after preliminary hearing had on the charge made against him he was bound over to the District Court of Burleigh County, North Dakota, to answer to said charge and because of his inability to furnish bond for his appearance in said court was incarcerated in the county jail of Burleigh County for more than sixty days; that the criminal action brought against him was dismissed on the application of the State's Attorney and the proceeding thus terminated in his favor, and by reason of the foregoing facts he suffered actual and special damages in the sum of $26,200 for which he asks judgment and in addition thereto he asks that he be awarded punitive damages in the further sum of $5,000.

Defendants answer jointly and except for admitting the corporate capacity of defendant bank and that defendant Roop was its Vice President as alleged, deny all of the other allegations of the complaint. For an affirmative defense defendants allege that a person describing himself as Houston Nickelson on August 26, 1947, opened an account in defendant bank by depositing therein a check for $900 drawn on the Exchange State Bank of Glendive and the following day the same person wrote a check on defendant bank in the sum of $400 payable to "Cash" and that defendant bank then paid said person the sum of $400; that the $900 check was returned by the bank on which it was drawn unpaid and marked "No A/C"; that shortly thereafter defendant Roop reported the foregoing facts to the Assistant State's Attorney of Burleigh County, North Dakota, at whose request said Roop signed a criminal complaint charging Houston Nickelson with the crime of obtaining money by false pretenses; that Houston Nickelson could not then be found and that on August 21, 1951, the State's Attorney's office of Burleigh County, North Dakota, received a telegram from the Chief of Police of Portland, Oregon, saying he

had Lester I. Nickelson, alias Houston Nickelson, in custody, that extradition was waived and requested instructions. The answer further alleges that the defendants never signed any complaint against Lester I. Nicholson nor asked for his arrest and that all matters were handled by the duly and regularly constituted police officers of Burleigh County, North Dakota, and denied that any act on the part of defendants resulted in any damage to plaintiff.

At the close of plaintiff's case defendants made separate motions that the action be dismissed, both of which were denied. An action may be dismissed only on one or more of the grounds stated in Section 28-0801 NDRC 1943 and dismissal of the action under this statute leaves the issues undetermined and the plaintiff free to sue again. Westerso v. City of Williston, 77 N.D. 251, 257, 42 N.W.2d 429.

Defendants offered no evidence and after both sides had rested made the following separate motions for directed verdicts which were resisted:

"Defendant, Norman I. Roop, moves that this Court direct the jury to return a verdict of dismissal of the action which is against him on the grounds and for the reasons that the evidence wholly fails to establish a cause of action against the defendant.

"The evidence wholly fails to show or to establish by a preponderance of the evidence *any malice* or *malicious intent* on the part of the defendant, or *any lack or want of probable cause* and the defendant, First National Bank of Bismarck, moves that this Court direct the jury to return a verdict in its favor for a dismissal of plaintiff's cause of action upon the same grounds and reasons that the plaintiff has failed to establish a cause of action against the defendant and has failed to prove any malice or malicious prosecution or lack of probable cause in the institution originating in the orginal criminal proceeding." (Emphasis ours.)

A motion for a directed verdict seeks not only the termination of the action but the destruction of the cause of action as well. If granted it puts an end to the claim against which it is asserted. 53 Am.Jur. 255, Sec. 308; Westerso v. City of Williston, supra.

Our statute, Section 28-1509 NDRC 1943, as amended by Chapter 204, SLND 1951, makes it mandatory on the trial court to deny a motion for directed verdict when resisted. The statute provides:

"When at the close of the testimony any party to the action moves the court to direct a verdict in his favor, and the adverse party objects thereto, such motion shall be denied and the court shall submit to the jury such issue or issues, within the pleadings on which any evidence has been taken, as either or any party to the action shall request."

The trial court accordingly denied both motions and submitted the case to a jury, which, on July 6, 1952, returned a verdict in favor of plaintiff and against both defendants. Although the court is required to deny the motion in the first instance such ruling is subject to review on a motion for judgment notwithstanding the verdict made within ten days after rendition of the verdict. Section 28-1510 NDRC 1943, as amended by Chap. 204, SLND 1951, provides:

"In denying a motion for a directed verdict the court shall be deemed to have submitted the action to the jury subject to a later determination of the questions of law raised by the motion. Within ten days after the reception of a verdict, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment notwithstanding the verdict entered in accordance with his motion for a directed verdict, * * *."

On July 9, 1952, counsel for defendants filed with the trial judge their written motion for judgment notwithstanding the verdict, setting forth as grounds therefor:

"1. That the evidence wholly failed to show that there was want of probable cause for the commencement of the criminal proceeding against Houston Nicholson, and that the evidence conclusively established that probable cause existed.

"2. That the evidence affirmatively establishes that there was no malice on the part of either defendants in the institution of the criminal proceedings.

"3. That the evidence affirmatively establishes that the institution of criminal proceedings was with the advice and consent and approval of the Assistant State's Attorney of Burleigh County, the county in which the proceeding was commenced.

"4. That the evidence establishes probable cause for the institution of the criminal proceedings by the testimony of the committing magistrate who bound the plaintiff over to the District Court.

"5. That, as a matter of law, probable cause for the commencement of criminal proceedings existed against Houston Nicholson at the time of the commencement of the proceedings, and that subsequent events would have no legal bearing on the question of probable cause."

Counsel for plaintiff was present in court when the foregoing motion was filed and participated in the hearing then had on such motion. The court granted the motion of both defendants for judgment notwithstanding the verdict and ordered judgment that plaintiff's action be dismissed on its merits. Judgment was thereafter entered in conformity with said order.

Plaintiff appeals from the order granting the motion of both defendants for judgment notwithstanding the verdict and from the judgment entered dismissing his action on the merits.

■ The denial of a motion for directed verdict does not deprive the trial court of the right to consider it further if, within the time provided by statute, Chapter 204, SLND 1951, the party making the motion follows it with a motion for judgment notwithstanding the verdict or with a motion for a new trial. The order granting the motion for judgment notwithstanding the verdict amounts to a delayed action directed verdict. Ennis v. Retail Merchants Ass'n Mutual Fire Ins. Co., 33 N.D. 20, 156 N.W. 234; Bormann v. Beckman, 73 N.D. 720, 19 N.W.2d 455, 458; Weber v. United Hardware & Implement Mutuals Co., 75 N.D. 581, 31 N.W.2d 456, 458. The defendants having made their motions for dismissal at the end of the plaintiff's case and having made their motions for directed verdicts at the close of all of the evidence, and their motion for judgment notwithstanding the verdict within ten days after its rendition and before the entry of judgment have taken all of the necessary prerequisites entitling them to have their motion for judgment notwithstanding the verdict considered by the trial court and on this appeal.

■ Plaintiff in his brief and on oral argument has raised two questions of procedure challenging the sufficiency of the motions for directed verdicts, and for judgment notwithstanding the verdict, which we will note before passing on the merits of the case. First he asserts that the trial court could not consider the motions for directed verdicts made by the defendants at the close of all of the evidence, because, he says, the motions which challenge the sufficiency of the evidence to sustain a verdict for plaintiff, did not point out the particulars wherein the evidence was insufficient. Counsel calls our attention to the familiar rule that motions for directed verdicts will not be considered on appeal—when made on the ground of the insufficiency of the evidence—unless the particulars wherein defendant claims the evidence is lacking is specifically pointed out, and would apply it to the facts and record in this case. The rule is a salutary one and has consistently been adhered to by this court. Kolka v. Jones, 6 N.D. 461, 71 N.W. 558; Westerso v. City of Williston, supra; Jacobs v. Bever, N.D., 55 N.W.2d 512.

■ This rule has generally been applied to cases where the motion for directed verdict and the companion motion for judgment notwithstanding the verdict have been denied. Jacobs v. Bever, supra; Westerso v. City of Williston, supra, and cases cited in 77 N.D. 259 and 260, 42 N.W.2d 433 and 434, which include the cases cited and relied on by plaintiff. Illustrative of the cases cited by plaintiff, in which the court held the motion for directed verdict not sufficiently specific are: Minder & Jorgenson Land Co. v. Brustuen, 31 S.D. 211, 140 N.W. 251, where the language of the motion was that "No defense has been established in this court against that cause of action. The plaintiff, on the uncontradicted testimony, is entitled to judgment for such amount." Davis v. C. & J. Michel Brewing Co., 31 S.D. 284, 140 N.W. 694, 696, where the motion read as follows: "Defendant moves the court to direct the jury to return a verdict in favor of the defendant against the plaintiff, for the reason that the facts proven by the plaintiff are not sufficient to, and do not, constitute a cause of action against the defendant." and Howie v. Bratrud, 14 S.D. 648, 86 N. W. 747, where defendant moved for directed verdict "for the reason that the evidence is insufficient to show or constitute a cause of action." An examination of the cases cited in 77 N.D. 259, 260, 42 N.W.2d 433, 434, will disclose that they are cases in which the motion for judgment notwithstanding the verdict was denied. The situation in the instant case is very different. Here the trial court did review the evidence when passing on the motion for judgment notwithstanding the verdict, and must, therefore, of necessity, have reached the conclusion that the motions for directed verdicts did point out the particulars wherein the evidence was insufficient to sustain the verdict. The motions for directed verdicts specifically state that there is *no* evidence of malice or want of probable cause. In Smalley v. Rio Grande Western Ry. Co., 34 Utah 423, 98 P. 311, 317, referring to the sufficiency of a motion for a directed verdict the court said:

"We have not been referred to, nor have we seen, any case holding to the contrary." (That the motion must specify the particular grounds to justify it.) "This, however, does not mean that the movant of the motion or the court is required *to state reasons supporting the grounds.* If the grounds are sufficiently specified to call attention to the particular defects and the question of law on which the case is taken from the jury, that is all that is required. A mere general statement that, under the evidence, the plaintiff is not entitled to recover, or that the defendant is entitled to a verdict, or that the plaintiff has not made a sufficient case to go to the jury, does not point to anything. If, however, in a case of negligence a specification is made that the evidence is insufficient to show negligence on the part of the defendant, or that under the evidence the plaintiff is conclusively shown to be guilty of contributory negligence, or that he assumed the risk, etc., such a specification is ordinarily sufficient. If a verdict is directed on the ground that the evidence is insufficient to show negligence on the part of the defendant, it sufficiently is made to appear on what question of law the case was taken from the jury. *The making of such a specification ordinarily points out the defect within the meaning of the adjudicated cases."* (Emphasis ours.)

■ The foregoing case involved a question of negligence, but the holding is equally applicable to the case at bar where the motions pointed out that there was no proof of lack or want of probable cause or of malice. The positive statement in each that "there is no proof of lack or want of probable cause or of malice" was sufficient warning to plaintiff so that he could have, had he seen fit to do so, asked to have the case reopened to permit him to introduce further evidence in support of these two necessary elements in his cause of action. Counsel for plaintiff made no such request, nor has he on this appeal suggested that the evidence could be amplified in these respects on a new trial, but has steadfastly maintained that the evidence as now contained in the record is sufficient to sus-

tain the verdict rendered. We must, therefore, assume that further proof of malice or want of probable cause was not available or did not exist, and that hence the lack of evidence to sustain the verdict cannot be supplied on another trial if one were to be had. The motions for directed verdicts pointed out definitely and specifically that there was in the record neither proof of want of probable cause or of malice. In other words these elements of proof necessary to sustain plaintiff's cause of action were wholly lacking. This court has held that "The alleged grounds of the insufficiency of the evidence need not be specified in a motion for a directed verdict with the same particularity that is required in a motion for a new trial; it is enough that the insufficiency is pointed out in general terms." Olson v. Great Northern Railway Co., 56 N.D. 690, 219 N.W. 209, 212. This court has held in a case involving a motion for a new trial that "While [Sec. 28–1809 NDRC 1943], upon a motion for a new trial, requires a specification of insufficiency of the evidence to sustain the verdict to point out wherein the evidence is insufficient, nevertheless, if respondent does not object to this failure, and the trial court considers the evidence and passes upon its sufficiency, the failure to point out wherein the evidence is insufficient becomes immaterial." Clausen v. Miller, 63 N.D. 778, 249 N.W. 791, 792. We conclude that the statements in the motions for directed verdicts were sufficiently specific under the facts of the case.

■ The further procedural objection raised by plaintiff is that the motion for judgment notwithstanding the verdict may not be considered because the written motion was not filed with the Clerk of the District Court. The statute, Chapter 204, SLND 1951, does not require that it be filed, and if failure to file it constituted error it is error without prejudice because the record discloses that counsel for plaintiff was present when the written motion was submitted to the trial judge and participated in the hearing then held thereon. Failure to file the written motion for judgment notwithstanding the verdict with the Clerk of the District Court was not, under the facts of the case, a jurisdictional prerequisite to its consideration by the trial court or by this court on appeal.

This brings us to a consideration of the merits of the case. On August 26, 1947, a person claiming to be Houston Nickelson went to defendant bank and opened an account therein by depositing a check for $900 written by himself payable to "Cash" drawn on Exchange State Bank of Glendive, Montana, and signed Houston Nickelson. The following day the same individual withdrew from the account he had opened the sum of $400 by a check for that amount, also written by himself, payable to "Cash" and signed Houston Nickelson. Defendant Roop was then, and at the time of the trial of this action, a vice president of defendant bank and the individual who handled the original transaction resulting in the opening of the account in the name of Houston Nickelson. Some other officer or employee of the bank handled the transaction when the $400 check was presented and that amount withdrawn from the account. The $900 check was returned unpaid marked "No A/C" and because of the non-payment of the $900 check and the cashing of the $400 check defendant bank suffered a loss in the latter amount. Upon discovery of the loss defendant Roop reported the matter to Alfred Thompson, the Assistant State's Attorney of Burleigh County, North Dakota, who prepared a criminal complaint charging Houston Nickelson with the crime of obtaining money by false pretenses. The complaint was filed with I. M. Oseth, a justice of the peace in and for Burleigh County, North Dakota, who thereupon issued a warrant for the arrest of Houston Nickelson on said charge and delivered the warrant to the sheriff of said county for service. The person named in the warrant could not then be found and the sheriff issued the customary bulletin to be circulated among law enforcing officers announcing that he had a warrant for the arrest of Houston Nickelson. Nothing further transpired in connection with the

matter until August 21, 1951, when the State's Attorney's office of Burleigh County, North Dakota, received a telegram from the Chief of Police of Portland, Oregon, reading: "Lester I. Nickelson alias Houston Nickelson wanted by your office for forgery in custody. Waives extradition. Advise". When the foregoing telegram was received the original complaint and warrant could not be located. The Assistant State's Attorney thereupon prepared a new criminal complaint charging Houston Nickelson with the crime of obtaining money by false pretenses and took it to the First National Bank in Bismarck and procured its execution by defendant Roop, whereupon the justice issued a new warrant of arrest under which plaintiff herein was apprehended and returned from Portland, Oregon, to Bismarck, North Dakota, where he was placed in custody pending a preliminary hearing on the charge contained in the criminal complaint. The preliminary hearing resulted in plaintiff being bound over to the District Court. Bail was fixed, but being unable to furnish it, plaintiff was committed to jail where he remained for a period of approximately sixty days, at which time the complaint against Houston Nickelson was dismissed by a Judge of the District Court of Burleigh County, North Dakota, on the written application of the State's Attorney of said county reciting as grounds therefor that the State's Attorney did not believe there was sufficient evidence available to secure the conviction of Houston Nickelson. This lawsuit followed.

In considering the evidence for the purpose of determining whether the trial court was correct in its finding that there was no proof of lack or want of probable cause or of malice, we note first that the record is conclusive that the crime of obtaining money by false pretenses had been committed by some one, a fact which is conceded by all concerned. The whole case against these defendants hinges on the identity of the person committing the crime and specifically whether there was probable cause for believing that this plaintiff was the person who had written the checks by means of which the crime was committed.

Plaintiff denied that he was Houston Nickelson, the person who signed the checks or the person named in the complaint and warrant. His counsel maintains very strenuously that defendant Roop, testifying at the preliminary hearing, positively identified plaintiff as the person who had been in the bank and who had deposited the $900 check, and he then argues that such positive identification of plaintiff was the basis on which the committing magistrate made a finding of probable cause and bound plaintiff over to the District Court to answer to the charge contained in the complaint. The record, however, does not bear out counsel's contention. Because the question of identity is the crucial question in the case we quote all of the evidence in the record given by defendant Roop bearing on the identification of plaintiff, all of such testimony having been elicited on cross-examination under the statute, Section 31-0202 NDRC 1943.

"Q. Did you have a personal talk with the man who is—whose signature appears on the bottom of this check, at the time he presented it to you? A. Yes, sir.

"Q. Did you see him sign the check? A. Yes, sir.

"Q. Is the party who signed this check that man over there? (Indicating the man sitting at plaintiff's counsel table) A. I can't say that he is.

"Q. You don't know that? A. No, sir."

"Q. Mr. Roop, you appeared at the preliminary hearing in the case of State of North Dakota against Houston Nickelson? A. Yes, sir.

"Q. And testified at that hearing under oath? A. Yes, sir.

"Q. As I take it, there was no record made of that testimony? A. Not to my knowledge.

"Q. I see. Were you asked to identify the man being held in custody? A. Yes, sir.

"Q. By Mr. Thompson, the Assistant State's Attorney? A. Yes, sir.

"Q. And what was your answer to his question as to identity? A. I— I said there was a similarity as to his stature and mannerism.

"Q. But at that time you made no positive identification? A. No, sir.

"Q. Was there some talk then had in reference to a photograph? A. That was later. Yes, sir.

"Q. And did Mr. Nicholson produce a photograph that he said was of himself? A. Mr. Thompson gave it to me.

"Q. Did you hear Mr. Nicholson state that that was a photograph of himself? A. Yes, sir.

"Q. So he identified the photograph which is here, introduced in evidence, which is of being a photograph of himself? A. Yes, sir.

"Q. That is this plaintiff in this law suit? A. Yes, sir.

"Q. And were you then asked the question as to whether the man on that photograph was the man who had been in your bank and given you that check? * * * A. Yes, sir.

"Q. And what was your answer to that question? A. I said there was a similarity.

"Q. Isn't it true that you said this is the man? A. No, sir I did not.

"Q. And as near as you got to identifying the plaintiff, you said there was a similarity? A. Yes, sir.

"Q. And that— A. The man comes into the bank, if I may state, had black hair and side burns, but in stature he was about the same size. That was my testimony."

"Q. Now in swearing out this complaint, Exhibit Three, against Houston Nickelson, you were doing so for the purpose of punishing the wrongdoer for falsely obtaining money from the defendant bank, weren't you? A. No, sir.

"Q. What was your purpose in swearing out this complaint? A. To have Mr. Houston Nickelson arrested.

"Q. For the commission of that crime? A. Yes, sir."

"Q. What was your purpose in swearing out that complaint? A. To have the man arrested who actually signed the check.

"Q. Yes. In other words, Houston Nickelson? A. That is correct."

"Q. And do you mean to tell this jury that you did not identify this man as the accused party? A. Yes, sir.

"Q. And that even though you did not testify as to his identity, that the Justice of Peace, still bound him over to the District Court? A. I assume he did."

"Q. And didn't you tell him (Thompson, Assistant State's Attorney) that you did not intend to testify in this law suit here, that you had not made an absolute identity? A. Yes, and I still stand by that."

"Q. And you still say that you did not identify this plaintiff in this law suit as the same and identical man— You still say in this law suit you did not identify the man who was in your bank and opened that account as the same and identical man shown on that snap shot, to the best of your knowledge, information and belief? A. Yes."

Plaintiff called as witnesses the other persons present at the preliminary hearing, namely the deputy sheriff who apprehended plaintiff, the Assistant State's Attorney who conducted all of the proceedings in the criminal action, and the Committing Magistrate, and sought to show by their testimony that defendant Roop had positively identified plaintiff at the preliminary hearing.

Their testimony was taken on the trial of this case for the purpose of proving what oral evidence had been adduced at the preliminary hearing such evidence not having been reported in shorthand, reduced to writing, or preserved by the use of any mechanical recording device.

When plaintiff's counsel asked him to give the substance of the testimony that Roop gave at the preliminary hearing regarding the identity of the plaintiff, the magistrate said:

"Well, I can give the substance of it, but I, of course, it wouldn't be verbatim, because it's a long time ago now. But * * * Mr. Roop, had first declined to identify the defendant in this case, Mr. — the gentleman sitting behind you there now as the person concerning whom he testified when he established the existence of the commission of the offense. Then there was a photograph introduced by another witness, Mr. Hunter, a photograph, snapshot, showing a man without any beard standing besides an automobile and Mr. Hunter testified that when he arrested or about the time he arrested the defendant in this action, Mr. Nicholson had showed him or at least had talked to him about this photograph, and he stated, as I recall it, that it was a picture of himself, taken before he grew his beard. My impression is that he said about 19 months, but I couldn't be sure about the exact time. That photograph, picture, was introduced in evidence and should be in the record now as one of the Exhibits. Then that photograph was shown to Mr. Roop, and after having examined it, and apparently comparing it with the features of the defendant in this case * * *

"Q. (Interrupting) That is this gentleman here? A. Yes. (Continuing) and in response to another searching question, by myself, because the identity was of great importance in this case. He finally stated that, to the best of his knowledge and belief, the man in the photograph was the man who had committed the offense concerning which he had previously testified. The charge was obtaining money by false pretenses, as I recall it. Now that was as far as Mr. Roop would go. In the things to the best of his knowledge and belief, and I am not absolutely certain those were his exact words, but that is as close as my memory will permit me to testify."

The testimony of the Assistant State's Attorney is substantially the same as that of the magistrate.

The strongest testimony against Roop on the matter of positive identification comes from the deputy sheriff who testified:

"He said that his features resembled very much the man, except that the man before him had no whiskers at the time he was in the bank."

This witness was then shown the snapshot that is described in the testimony of the magistrate and asked what Roop said at the preliminary hearing with reference to the snapshot and the witness answered:

"I can't recall the exact words, but Mr. Roop, at that time,—after looking at this picture, indicated that this man was the man that had been in the bank."

On cross-examination the deputy sheriff said:

"I understood Mr. Roop to say it was the man that was in the bank."

A careful consideration of all the deputy sheriff's testimony discloses that he did not positively testify that Roop said that the man in the snapshot was the same man that was in the bank but that the deputy sheriff "understood" that Roop so testified.

The plaintiff argues that this evidence establishes that Roop positively stated that the plaintiff was the person who came into the bank and committed the crime and that the jury having found for the plaintiff, this court is bound thereby as to that fact and that plaintiff having been positively identified by Roop, he is liable to the plaintiff for false imprisonment to the extent of the damages determined by the jury.

We are unable to agree with the plaintiff either as to his contentions of fact or law. The jury were not entitled to take what the deputy sheriff understood Roop's testimony to be and expand it by inference into a positive identification contrary to the testimony of other witnesses. The evidence does establish, however, that the jury was entitled to reach the conclusion that Roop testified that the man in the snapshot, who was the plaintiff, was to Roop's best knowledge and belief the man who bilked the bank. We now pass to the law applicable to the case in order to determine whether the trial court erred in granting defendant's motion for judgment notwithstanding the verdict.

The plaintiff in a case of malicious prosecution has the burden of proving both lack or want of probable cause and malice, and if probable cause is shown, then the question of malice becomes immaterial, because no amount of malice, if there be probable cause, will render the defendant liable. Mielke v. Rode, 58 N.D. 465, 226 N.W. 507. In considering the evidence we are, however, required to consider it in the light most favorable to plaintiff. Olstad v. Stockgrowers Credit Corp., 66 N.D. 416, 266 N.W. 109; Nelson v. Scherling, 71 N.D. 337, 300 N.W. 803; Bormann v. Beckman, 73 N.D. 720, 19 N.W.2d 455; Weber v. United Hardware & Implement Mutuals Co., 75 N.D. 581, 31 N.W.2d 456. So far as the evidence of defendant Roop elicited on cross-examination under the statute is concerned we can consider only those parts that are favorable to plaintiff. Marino v. Valenti, Cal.App., 259 P.2d 84, citing Jeppi v. Brockman Holding Co., 34 Cal.2d 11, 18, 206 P.2d 847, 9 A.L.R.2d 1297; Young v. Bank of America, etc., 95 Cal.App.2d 725, 729, 214 P.2d 106, 16 A.L.R.2d 1155.

It is not incumbent on a person making complaint to the proper officers of the commission of a crime that such person should have positive proof, or proof beyond a reasonable doubt, that the person named actually committed the crime, if he has probable cause to believe that such person did commit the crime alleged and acted in good faith and with due regard to the rights of others, including the person charged, in making the complaint. The considerations governing the liability of a person making complaint to the proper officers of the commission of a crime and the effect of the committing magistrate's disposition of the case on preliminary hearing, are well stated in the case of Krehbiel v. Henkle, 178 Iowa 770, 160 N.W. 211, 213, from which we quote:

"In trials before a justice or upon indictment involving the guilt or innocence of the party charged, a finding that he is not guilty settles only the ultimate fact that the evidence introduced upon the trial does not show beyond a reasonable doubt that he is guilty. Such finding does not involve a determination of a question as to whether the prosecuting witness had probable cause for believing him guilty at the time the information was made or the indictment found. The court, sitting as a committing magistrate, and conducting a preliminary hearing, has before him for consideration the question of probable cause, and if, upon the preliminary hearing, he finds that a crime was committed, and that the evidence shows probable cause for believing the defendant guilty of the commission of the crime, the magistrate binds the defendant over to answer to the grand jury. If he finds no probable cause for so believing, he discharges the accused. The magistrate, after a full hearing, determines that upon such hearing there is no probable cause, in fact, for believing the party guilty of the offense charged, and upon this finding, based on the evidence adduced, he discharges the defendant. He finds the ultimate fact that there was no probable cause for believing the defendant guilty of the charge, but he cannot and does not determine, even in such a finding, that the prosecuting witness had no probable cause for believing him guilty at the time of the filing of the information.

The finding of the justice rests upon a hearing made. The belief of the prosecuting witness rests upon facts, matters, and information which had come to his knowledge before the filing of the information which, supposing him to be a man of ordinary prudence, judgment, and discretion, were sufficient to lead him to believe the party guilty of the offense charged.

"There is a clear distinction between a finding that there was in fact no probable cause for holding the defendant to answer and the assertion that the party filing the information at the time, was not justified, acting as a reasonably prudent man would act under like circumstances, in believing the party guilty of the offense. The justice determines, when sitting as a committing magistrate, not the guilt or innocence of the accused, but whether the facts exposed on the trial were such as tended to show that the accused was probably guilty of the commission of a public offense. Thus it has been repeatedly held by this court that, if the defendant honestly thought the facts alleged in the information or in the affidavit in this case were true, and this belief was based upon a knowledge of facts and circumstances tending to show that they were true, which was sufficient to induce an ordinarily reasonable and cautious person to believe them true, and he did so believe them true, he is justified in commencing the prosecution, and cannot be said to be without probable cause for so doing."

In this case the record conclusively shows that all proceeding for the arrest, apprehension and binding over of plaintiff herein were handled by the regular and duly constituted law enforcing officers. Defendant bank participated not at all and defendant Roop only to the extent that he was asked to do so by the law enforcing officers. In his brief and on oral argument counsel for plaintiff virtually concedes that the original arrest of the plaintiff was justified, but predicates his right to recover on the theory that defendant Roop was responsible for *continuing* the prosecution of the criminal case against plaintiff after receiving information indicating that the plaintiff in the present action was not Houston Nickelson the person charged in the complaint signed by defendant Roop. In support of this claim counsel cites a number of cases, and other authority, on the general proposition that even though there may have been probable cause for the arrest in the first instance a defendant may be held liable if, without probable cause, he continues the prosecution. We do not question the correctness of the rule of law for which counsel contends, but we fail to see where it is applicable to the facts in this case, showing, as they do, that the only participation of either defendant in the prosecution of the criminal case was in defendant Roop signing the complaint when requested to do so, and appearing and testifying at the State's Attorney's request at the preliminary hearing. This was not such a participation in the continuance of the prosecution as the cases contemplate. Under the law of this state once a prosecution on a felony charge has been initiated the complaining witness loses all control over it. A complaint charging the commission of a public offense, including a felony, must be dismissed by the committing magistrate if it appears that a public offense has not been committed or if there is not sufficient cause to believe the defendant guilty thereof, Sec. 29–0718, NDRC 1943, and can be dismissed only by the judge of the district court of the county where the action is pending after the defendant has been bound over, and then only on the written application of the State's Attorney of such county therein setting forth good reasons for the discontinuance of the prosecution. Section 29–1801 NDRC 1943 and Section 29–1804 NDRC 1943.

In the case before us, if Houston Nickelson and Lester I. Nicholson actually are different individuals there has been a mistake as to the identity of this plaintiff, but the mistake, if any, originated with and was continued by the public authorities having charge of the case. If Houston Nickelson and Lester I. Nicholson are dif-

ferent individuals the initial mistake of identity was made by the Police Department of Portland, Oregon. The record is silent as to just why the members of that Department concluded that Lester I. Nicholson and Houston Nickelson was the same individual. Plaintiff was a witness in this case in his own behalf and testified that he was not in the State of North Dakota during the month of August, 1947. He did not testify where he was during that month nor did he offer any evidence whatsoever to corroborate his claim of an alibi. Neither defendant ever made any charge against Lester I. Nicholson, signed no complaint charging him with the commission of any crime, nor did they ask that Lester I. Nicholson be arrested. The only charge made by either defendant was a charge against Houston Nickelson, as to whom there was conclusive evidence of probable cause. These defendants can not be held liable for a case of mistaken identity committed by the law enforcing officers having the matter in charge.

The situation here is not different from that present in the case of Hughes v. Oreb, 36 Cal.2d 854, 228 P.2d 550, 553, from which we quote:

> "Plaintiff contends that the nonsuit as to defendant Oreb was improper, and he relies on the rule that a person who participates in an unlawful arrest, or who causes or procures or instigates it, is liable for false imprisonment. (Citing cases.) The cases make it clear, however, that the defendant must have taken some active part in bringing about the unlawful arrest and that he is not liable if, acting in good faith, he merely gives information to the authorities. (Citing cases.) It was pointed out in the Miller case [Miller v. Fano] that every person is entitled to give information to the proper officers and that it would be unjust to impose liability for an honest mistake in identification even where the identification may have been the principal cause of the wrongful arrest. 134 Cal. [103] at pages 106–107, 66 P. 183. Particularly pertinent with

regard to what constitutes instigating or participating in an unlawful arrest is the language of Gogue v. MacDonald that where 'the defendant reports the facts to the magistrate, takes no active part in the arrest but leaves the matter to the public officials and no bad faith appears, he is not liable merely because the facts he has stated to the magistrate do not constitute a public offense.' 35 Cal.2d [482] at page 487, 218 P.2d [542] at page 545 [21 A.L. R.2d 639].

> "In the present case there is evidence that defendant Oreb called the police and pointed out plaintiff as the man who was spending silver dollars, but there is nothing to indicate that he gave any false information to the officers or that he took any active part in bringing about the arrest. It might be inferred that Oreb requested the officers to make an investigation, but it is clear from the cases discussed above that his conduct was not sufficient to render him liable for false imprisonment even though the subsequent arrest may have been unlawful. The nonsuit as to Oreb, therefore, was properly granted."

In Miller v. Fano, 134 Cal. 103, 107, 66 P. 183, 184, being one of the cases cited in the foregoing quotation, the court said: "It would be a hard and unjust law that would hold a party responsible in damages for false imprisonment for an honest mistake as to the identity of a party." In Turner v. Mellon, 257 P.2d 15, 17, a case of false imprisonment, the Supreme Court of California said:

> "All that Mellon did here was to report the commission of the crimes and state to the police officers his honest but mistaken opinion that plaintiff was the robber. This conduct did not in law amount to taking 'some active part in bringing about the unlawful arrest,' and since Mellon did not participate in the false imprisonment neither he nor his employer, whose only liability would necessarily rest on the doctrine

of *respondeat superior,* is liable therefor."

The court went on to say:

"Plaintiff relies upon Turner v. Elliott, 1949, 91 Cal.App.2d 901, 904, 206 P.2d 48, wherein understandable and commendable concern is shown for the victims of mistaken identification and ensuing false arrest. We share this concern but we think that proper concern for the victim in such a case must stop at some point along the line where to support his claims further would contravene the public interest. We think it serves the public interest—and, hence, the line should be drawn here—that citizens who have been criminally wronged may, without fear of civil reprisal for an honest mistake, report to the police or public prosecutor the facts of the crime and in good faith, without malice, identify to the best of their ability to such public officers the perpetrator of the crime. Investigation and action from then on are the responsibility of the public employes who are skilled in that work and who are paid to perform it. The victims of crimes should not be held to the responsibility of guarantors of the accuracy of their identifications."

Schnaufer v. Price, Tex.Civ.App., 124 S. W.2d 940, is very much in point. In that case, as in the case at bar, a swindle had been perpetrated on a bank official. The arrest of the plaintiff was made solely by and upon the responsibility of public officials. But he was the wrong man. After his arrest the bank official positively identified the plaintiff as the swindler, while in the case at bar the identification is not positive. The plaintiff in that case was later released upon the opinion of a handwriting expert to the effect that he did not sign a note involved in the swindle. The court held that the plaintiff failed to establish a cause of action for false arrest and imprisonment. That case is cited in the following annotations: 10 A.L.R.2d 756; 21 A.L.R.2d 711.

On the question of identity and the effect of the action of the committing magistrate in binding a defendant over see the case of White v. Pacific Telephone & Telegraph Co., 162 Or. 270, 90 P.2d 193, 197, where the Oregon court, among other things, said:

"Since it is undisputed that a preliminary examination was held and the plaintiff was bound over to appear before the grand jury by the committing magistrate and there being no evidence that the action taken by the committing magistrate was obtained by false testimony, fraud or other improper means, upon this ground alone, the plaintiff cannot prevail in this action."

For further authority on the question of liability in the case of mistaken identity see 34 Am.Jur. 733, Sec. 49; Annotation in 65 A.L.R. 225; Foulke v. New York Consol. R. Co., 228 N.Y. 269, 127 N.E. 237, 9 A.L.R. 1384.

The dismissal of the criminal prosecution on the application of the prosecuting attorney would not be evidence against the defendant on the issue of want of probable cause in commencing the proceeding. 34 Am.Jur. 742, Sec. 62. See also annotation 114 A.L.R. page 889.

The plaintiff failed to prove lack or want of probable cause or malice. It follows that the judgment of the District Court must be and is affirmed.

Judgment affirmed.

MORRIS, C. J., GRIMSON, CHRISTIANSON and SATHRE, JJ., and NELSON, District Judge, concur.