Harold LONG, Plaintiff and Appellant,

v.

PEOPLE'S DEPARTMENT STORE, a corporation, Gordon Savran and Haskel L. Cohodes, Defendants and Respondents.

No. 7479.

Supreme Court of North Dakota.

Dec. 19, 1955.

Rehearing Denied Jan. 17, 1956.

J. K. Murray, Bismarck, for plaintiff and appellant.

Cox, Pearce & Engebretson, Bismarck, for defendants and respondents.

SATHRE, Judge.

This is an action brought by the plaintiff against the defendants for damages for malicious prosecution. The complaint alleges that the defendant People's Department Store is a domestic corporation, and that the defendants Gordon Savran and Haskel Cohodes were officers, employees and managing agents of said corporation. The complaint then alleges that the defendants maliciously and wrongfully caused to be filed a criminal complaint with a committing magistrate of Burleigh County, North Dakota, charging plaintiff with the crime of obtaining money under false pretenses, that under a warrant issued on said criminal complaint, plaintiff was arrested and brought before said committing magistrate, and that upon a hearing before said magistrate it was conclusively proved that plaintiff was not the party who had committed the alleged crime and that such fact was well known by the defendants, and that the committing magistrate entered judgment dismissing said action against the plaintiff. It is further alleged that said prosecution was wholly without probable cause; that by reason of said prosecution plaintiff was damaged in the sum of $5,000. Judgment is then demanded against the defendants in the sum of $5,000.

The defendants answered jointly and admitted the corporate existence of the People's Department Store, but denied specifically that the defendants or any of them ever in any manner accused or complained against plaintiff of the commission of a crime or that they had taken any steps or proceedings for prosecution of the plaintiff for a crime. Defendants specifically deny that the plaintiff has suffered any damages by reason of any act of any of the defendants.

The case was tried in the district court of Burleigh County to the judge and a jury. At the close of plaintiff's case, the defendants made motions for a directed verdict dismissing the action. The motions were denied. Again, at the close of all of the testimony the defendants separately made motions for a directed verdict of dismissal of the action. The trial court denied the motions and submitted the issues to the jury under Section 28–1509, 1953 Supp. NDRC 1943.

The jury returned a verdict awarding damages to the plaintiff, and thereafter the defendants made motions for judgment notwithstanding the verdict, or in the alternative for a new trial. The trial court granted the motion for judgment notwithstanding the verdict and the plaintiff appealed.

The specifications of error assigned on this appeal are that the trial court erred:

1. In granting the respondents motion for judgment notwithstanding the verdict;

2. In making and entering its written Order dated June 19, 1954 vacating and setting aside the judgment theretofore entered in favor of the appellant and against the respondents in the amount of $944.90;

3. In entering judgment in favor of the respondents and against the appellant on said motion for judgment non obstante.

■ Appellant argues that defendants' motion for a directed verdict is insufficient in that it merely states conclusions and fails to state any part wherein the evidence is insufficient, and that a motion for judgment notwithstanding must stand or fall on the question of the validity of the motion for a directed verdict. Section 28–1509, 1953 Supp. NDRC 1943 makes it mandatory on the trial court to deny a motion for a directed verdict when resisted and to submit the issues to the jury. The statute provides:

"When at the close of the testimony any party to the action moves the court to direct a verdict in his favor, and the adverse party objects thereto, such motion shall be denied and the court shall submit to the jury such issue or issues, within the pleadings on which any evidence has been taken, as either or any party to the action shall request."

The defendants in the instant case made motions for a directed verdict of dismissal of the action at the close of plaintiff's case and again at the close of all the evidence when both parties had rested. The motion made at the close of all the testimony was made upon the following grounds:

"Mr. Pearce: At this time, both parties having rested, the defendants, People's Department Store, a corporation, Gordon Savran, Haskell L. Cohodes, and each of them, separately moves the Court to direct a verdict in favor of each defendant for a dismissal of the action on the grounds and for the reasons that no evidence has been offered or received in any way tending to prove a lack of probable cause for the institution of a criminal action entitled State of North Dakota v. Harold Long, on or about the 7th day of August 1952; and that the evidence affirmatively establishes that there was probable cause for the signing of said criminal complaint by Haskell L. Cohodes against one Harold Long for the issuing of a check without funds. That no evidence has been offered or received proving or tending to prove that there existed any malice, actual or constructive, or legal, against the plaintiff in this case, Harold Long, by any of the defendants. That the evidence establishes without contradiction that the selection of the plaintiff in this action as the man to be arrested was the act of the sheriff's office of Burleigh County, North Dakota, not the act of any of these defendants. That the evidence establishes that there was no continuation of the prosecution subsequent

to the first and only hearing before the Justice of the Peace before whom Harold Long was taken upon his arrest. And upon all the grounds stated in the motions made at the close of plaintiff's case.

\* \* \* \* \* \*

"Mr. Pearce: I would like to renew at this time the motion to dismiss I made at the close of plaintiff's case on behalf of the People's Department Store, a corporation, upon the grounds there set forth, and upon the grounds and for the reason that there has been no showing of any authority, ostensible or otherwise, of Haskell L. Cohodes, acting as either an agent or officer of the corporation in executing the criminal Complaint; and that the evidence has established without contradiction that no corporate action was ever taken in connection with the Complaint against and the arrest of Harold Long."

■ . The grounds upon which the motion for a directed verdict were based were specific. They pointed out that no evidence had been offered or received tending to prove a lack of probable cause for the signing of a criminal complaint against one Harold Long for issuing a check without funds; that no evidence was offered or received tending to prove that there was any malice, actual, legal or constructive against the plaintiff; that the evidence established that the selection of the plaintiff in this action as the person to be arrested was the act of the Sheriff of Burleigh County and not the act of any of the defendants. Section 28-1510, 1953 Supp. NDRC 1943 provides:

"In denying a motion for a directed verdict the court shall be deemed to have submitted the action to the jury subject to a later determination of the questions of law raised by the motion. Within ten days after the reception of a verdict, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment notwithstanding the verdict entered in accordance with his motion for a directed

verdict, or if a verdict was not returned, such party, within ten days after the jury has been discharged, may move for judgment in accordance with his motion for a directed verdict. The motion for judgment notwithstanding the verdict may be joined with an alternative motion for a new trial. If a verdict was returned, the court may allow the judgment to stand or may reopen the judgment as if the requested verdict had been directed. If no verdict was returned, the court may direct the entry of judgment as if the requested verdict had been directed or may order a new trial."

■■ In the case of Westerso v. City of Williston, 77 N.D. 251, 42 N.W.2d 429, 433, we said:

"It is settled law in this state that the sufficiency of the evidence to sustain the verdict cannot be raised in or determined by this court unless the question was raised in the trial court either by motion for a directed verdict or by a motion for a new trial or both and the ruling or rulings on such motion or motions assigned as error on appeal."

The question as to the sufficiency of a motion for a directed verdict was before this court in the recent case of Nicholson v. Roop, N.D., 62 N.W.2d 473, 476, 43 A.L.R. 2d 1031. The motion for a directed verdict in that case was based on the following grounds which were held sufficient to support the motion:

" 'The evidence wholly fails to show or to establish by a preponderance of the evidence any malice or malicious intent on the part of the defendant, or any lack or want of probable cause and the defendant, First National Bank of Bismarck, moves that this Court direct the jury to return a verdict in its favor for a dismissal of plaintiff's cause of action upon the same grounds and reasons that the plaintiff has failed to establish a cause of action against the defendant and has failed to prove any malice or malicious prosecution or lack

of probable cause in the institution originating in the original criminal proceeding.' "

From the record before us in the instant case it is clear that the motion for a directed verdict stated sufficient grounds therefor.

The appellant next contends that defendants' motion for judgment notwithstanding the verdict is defective in that it does not ask the court to review its ruling on the motion for a directed verdict, and that it does not even state that it is made upon all the grounds specified in the motion for a directed verdict. It is asserted that the motion is "a wholly independent proceeding; that therefore the district court had no jurisdiction to hear or determine such motion on its merits, and consequently should have denied it."

The motion for judgment notwithstanding the verdict is as follows:

"Now come the above named defendants, People's Department Store, a corporation, Gordon Savran, and Haskel L. Cohodes, each of them having heretofore at the close of the testimony at the trial of the above entitled action on the 16th day of February, 1954, moved the Court separately to direct a verdict in favor of each of said defendants, which motions were objected to and were denied, and thereafter a verdict having been returned by the jury in favor of the plaintiff and against all of said defendants, and each of said defendants do now move severally that a judgment be entered in favor of said defendants, and each of them, for a dismissal of plaintiff's action notwithstanding the verdict, or in the alternative that a new trial be granted, of said action, on the following grounds, to-wit:

1

"That the evidence at said trial wholly failed to show or establish by a fair preponderance of the evidence, or at all, that there was any want of probable cause for the commencement of criminal proceedings against one Har-

old Long, and that in fact the evidence conclusively and without contradiction established, as a matter of law, that one Harold Long issued, executed and delivered to People's Department Store a check for $25.00, on or about the 7th day of July, 1952, drawn on a bank in which the said Harold Long did not then, or at the time said check was presented for payment, have funds on deposit to meet said check, and that probable cause existed for the signing of a complaint against Harold Long for the crime of issuing said check without funds, which is the proceeding thereby instituted on which said action is based.

2

"That the evidence affirmatively and without contradiction establishes that there was no malice on the part of any defendant in the signing of said complaint or the institution of said criminal proceeding against the party issuing said check, or against the plaintiff in this action.

3

"That the evidence affirmatively establishes, without contradiction, that the institution of the criminal proceeding which is the basis for this action, was with the advice and with the consent of, and approved by, an attorney at law, who was the duly appointed, qualified and acting Assistant State's Attorney of Burleigh County, North Dakota, the county where such proceedings was commenced.

4

"That the evidence affirmatively establishes, without contradiction, that said complaint was executed by the defendant, Haskel L. Cohodes, in his individual capacity; that the plaintiff in this action was arrested by the Sheriff or his deputy, of Burleigh County, North Dakota, and that the first time that any defendant saw this plaintiff was at the hearing before I. M. Oseth, Justice of the Peace of Burleigh County, North Dakota, on the 18th day

of August 1952. That at the trial, as shown by the testimony of both the Justice of the Peace and the Assistant State's Attorney, no defendant identified this plaintiff· as the person who signed the check or as the person against whom said complaint was directed; that said criminal prosecution was conducted entirely by the Assistant State's Attorney of Burleigh County, as the attorney for the plaintiff, the State of North Dakota; and that at the conclusion of said hearing or trial, this plaintiff—who was the person arrested by the Sheriff—was discharged and said criminal proceeding dismissed. That the evidence discloses that no other action was taken against this plaintiff, and that the only continuation of the prosecution claimed was the fact that Haskel L. Cohodes, at the request and direction of the Assistant State's Attorney, appeared as a witness in said action. That as a matter of law, the participation by Haskel L. Cohodes, one of the defendants in this action, was not such a continuation of the prosecution as to constitute in law any malice.

### 5

"That the evidence of both plaintiff and defendants fails to establish by a preponderance of the evidence that the defendants, or any of them, were responsible for the apprehension and arrest by the Sheriff of the plaintiff in this action as the person accused of issuing the said check.

### 6

"That the plaintiff has failed, as a matter of law, to establish that either or any of the defendants· in this action acted without probable cause or that any malice existed, either actual or implied.

### 7

"That the evidence, without contradiction, establishes that at the time said criminal complaint was signed, defendant Cohodes furnished the State's Attorney, the Justice of the Peace, and the arresting officer with a means of identifying the intended defendant, to-wit: the number · of the North. Dakota driver's license, and the place of residence, to-wit, Washburn, North Dakota, of the person who issued the check, and that the Sheriff of Burleigh County, ignoring said means of identification and on his own responsibility, arrested the plaintiff in this action; and that as soon as the plaintiff in this action was brought before the magistrate and a hearing held thereon, the criminal prosecution against him was dismissed.

### 8

"That even if defendants had identified the plaintiff herein as the person who issued the check, that said identification would not be sufficient legal evidence to sustain the verdict in this case because there was no evidence offered to sustain a claim that such identification was with malice.

### 9

"That there is insufficient evidence to justify the verdict of the jury in this. action, and that it is against the law.

### 10

"This motion is made and based upon the minutes of the Court, the pleadings and records in the above entitled action, and on the evidence and exhibits introduced in the trial of said action."

The contention of the appellant that the motion for judgment notwithstanding the verdict is defective in not stating that it is. made upon all the grounds for a directed verdict is evidently based on Section 28–1510, 1953 Supp. NDRC 1943, which among other things provides that "a party who has moved for a directed verdict may move to· have the verdict and any judgment entered. thereon set aside and to have judgment notwithstanding the verdict entered *in accordance with his motion for a directed verdict."*

While the motion for judgment notwithstanding the verdict does not state in the exact words of the statute that it is made in accordance with the motion for a directed verdict, nevertheless the grounds upon which the motion is made are almost identical with the grounds upon which the motion for a directed verdict is made. It would indeed be hypertechnical construction of the statute to hold that the exact words "in accordance with his motion for a directed verdict", must be made a part of the motion for judgment notwithstanding the verdict. Rather the requirement of the statute is that a motion notwithstanding the verdict must be made upon the same grounds as the motion for a directed verdict.

An almost identical situation was before this court in Nicholson v. Roop, supra, N. D., 62 N.W.2d 473, 43 A.L.R.2d 1031. The motion for judgment notwithstanding the verdict did not use the phrase "in accordance with his motion for a directed verdict," but the grounds upon which both motions were made were practically the same. A comparison of the grounds specified in the two motions in the instant case shows that the language in both is practically identical. We conclude therefore that there is no merit to appellant's contention in this respect.

We now come to the consideration of the merits of the case. The appellant contends that the evidence is fully sufficient to support the verdict of the jury.

The facts in the case are substantially as follows:

On July 7, 1952, a person giving his name as Harold Long appeared at the store of the defendant, People's Department Store, at Bismarck, North Dakota, purchased some merchandise, and gave in payment a check in the sum of $25 drawn on The Farmers Security Bank, Washburn, North Dakota. Haskel Cohodes who waited on the purchaser in this transaction did not know him. He asked the purchaser for some evidence of identification, and was shown the purchaser's drivers license carrying the number 89581. Cohodes put this number in the lower left corner of the check with the letters 'D. L. before it. This drivers license was issued to one Harold Long which was the name signed on the check. The Harold Long who signed the check is a real person, but is not the plaintiff in this case, although their names are identical.

The check was returned by the drawee bank marked "No Account". Thereupon Mr. Cohodes took the check to the assistant state's attorney of Burleigh County. A criminal complaint was prepared by the assistant state's attorney charging one Harold Long with the offense of issuing a check without having funds or credit for payment of same, which complaint was signed by said Haskel Cohodes. The check with the drivers license number noted thereon was left with the assistant state's attorney.

At the trial in the instant case Colonel I. M. Oseth, the Police Magistrate who acted in the capacity of Justice of Peace at the hearing in the criminal case involving the bad check testified that Cohodes was the only witness for the state in the criminal case, and that he, Cohodes, stated definitely that he could not identify the defendant in that case, Harold Long, as the person who presented the check at the store.

Alfred Thompson, called as a witness for the defendants, testified that he was the assistant state's attorney of Burleigh County; that he prepared the complaint charging one Harold Long with the offense of issuing a check without funds and that he tried the case on behalf of the state; that Haskel Cohodes was the only witness for the state in the said case; that the witness Cohodes was asked by said Thompson whether he could identify the plaintiff Harold Long, as the man who wrote the check involved and that Cohodes replied, "I can't identify the man as the individual who passed the check at our store."

The important question before us is as to what took place when Schmitz, the sheriff, called at defendants' store several days after the warrant had been issued upon the complaint signed by Cohodes. The sheriff told Cohodes and Savran that the only Har-

old Long that he knew was a brother of one Jerry Long who operated an oil station and that said Harold Long operated a beer tavern. We quote from his testimony:

"Q. When you got that warrant, did you go to the Peoples' Department Store to have the man identified, which Long they wanted? A. I was in the store there.

"Q. Did you see Mr. Cohodes there and Mr. Savran? A. Yes.

"Q. Were they both together, Cohodes and Savran? A. Yes.

"Q. What did they say to you as to which Long to arrest? A. We got talking about this check deal, and I said there was a Harold Long in town operating a tavern, that he is a brother of Jerry Long running and operating the oil station, and one of them says, 'That must be the man, this Harold Long that we have the check against.'

"Q. Which one said that? A. I don't know which one.

"Q. It was either Cohodes or Savran? A. I don't know which one it was, but they said, 'Evidently that was the man'.

"Q. Then did you go back and give that information to Goldader? A. Yes, sir.

"Q. And told him to go and arrest him? A. I told him to go and take him in front of the Judge.

"Q. Do you know this Long that runs the oil station? A. Yes, Jerry.

"Q. And did you know at that time he was a brother to Harold here, the plaintiff? A. Yes, sir.

"Q. And when they told you that the man they were after was a brother to the Long in the oil station, you knew it was the plaintiff they wanted? A. I took for granted that was the one they wanted, yes."

On cross examination the sheriff testified further with reference to the conversation in defendants' store.

"Q. Did you have the warrant with you, Mr. Schmitz, the day you were in the store? A. No, I didn't.

"Q. Had you gone to the store particularly to talk to them? A. No, sir. I went in to do some shopping, and they asked me if we had located this man Long.

"Q. What did you say? A. I told them that the only Long we knew was the one operating a tavern and that he was a brother to Jerry, and someone said, 'That is the man that wrote the check,' or words to that effect.

"Q. Those exact words appear quite important in this lawsuit. You said one of them said, 'That must be the man'? A. This is right.

"Q. Then you said, your next statement was, 'That is evidently the man'. Can you at this time recollect the exact words? A. As close as I can remember, Mr. Pearce, it was: they said that he was the man, or the Harry Long that wrote that check.

"Q. I am trying to point out what they said, that, 'he was the man', or 'evidently, he must be the man"; which was it? A. As close as I recall, they said he was the man.

"Q. Your recollection was earlier when you first said that, that they said 'evidently he was the man'?

"Mr. Murry: We object to that as argumentative.

"The Court: Overruled. A. I believe they said he was the man.

"Q. Then you wish to correct your testimony when you said he said, 'evidently he was the man'? A. Yes, if the meaning is not the same?

\*　　\*　　\*　　\*　　\*　　\*

"Q. Do you remember the day that you were in the People's Department Store? A. That would be the 15th.

"Q. So, any other action that you took before that must have been between the time that the warrant was delivered to your office, probably on the 11th, and August 15th? A. That is right.

"Q. And then you went back to your office and gave it to Mr. Goldader, your deputy at the time? A. That is right.

"Q. And what information did you give Mr. Goldader as to where to pick up the defendant? A. Of course, I couldn't give you the exact words, but I told Mr. Goldader that I had the information that that Harold Long was the man that was wanted on this warrant from the information I got at the store, and I told him to go and get him and bring him before the Court to see if he was the fellow.

"Q. Did he do that that day? A. Yes, he did."

Neither Savran nor Cohodes denied that the conversation in the store testified to by sheriff Schmitz took place. Their testimony is that they could not remember the conversation. We quote from the testimony of Cohodes:

"Q. Do you recall after you signed the Complaint and before the trial there was a conversation in your store with P. J. Schmitz, the Sheriff? A. I remember him being there and making a purchase.

"Q. Is he a frequent visitor in your store? A. I would say occasionally.

"Q. What was the conversation with Mr. Schmitz as near as you can recall it, concerning this case—by this case, I mean the case that you had commenced by signing the Complaint? A. As I remember Mr. Schmitz came in the store and I believe he came and purchased a hat at the time, and Mr.

Schmitz and myself were talking to Mr. Savran and he mentioned the fact that he had this warrant that I had sworn out on a bad check charge and we got to talking about the bad check and the party who had signed this check, and I recall Mr. Schmitz making the statement that there is a fellow who runs a gas station, Jerry Long, and he has got a brother, Harold Long. He said maybe that is the guy, or something like that, I don't remember the exact words he used, and that is all I remember about the conversation concerning this case. There were customers in the store and during the time Mr. Schmitz was there I was with the two gentlemen and away waiting on customers."

With reference to this conversation Mr. Savran testified as follows:

"Q. After the Complaint had been signed by Mr. Cohodes, do you recall Mr. P. J. Schmitz being in your store and talking about it? A. Well, I recall P. J. Schmitz being in the store.

"Q. Do you recall that a conversation was had concerning this bad check and what was being done about it? A. I recall a conversation that was on this particular bad check.

"Q. As near as you can recall, what was the conversation between Mr. Schmitz and yourself? A. The conversation was that he hadn't yet succeeded in running down the giver of the check.

"Q. Do you know any person named Harold Long? A. No, I did not.

"Q. Did you know any person named Jerry Long? A. No, I didn't know any person named Jerry Long.

"Q. Was there a conversation there by Mr. Schmitz to the effect that a Mr. Jerry Long had a brother named Harold Long? A. I do not recall."

■ ■ The question to determine is whether on the evidence the trial court erred in granting defendants' motion for judgment notwithstanding the verdict. In a case of malicious prosecution the plaintiff has the burden of proof both as to lack of probable cause and malice. Mielke v. Rode, 58 N.D. 465, 226 N.W. 507. However, in considering the evidence it must be construed in the light most favorable to the plaintiff. Olstad v. Stockgrowers Credit Corporation, 66 N.D. 416, 266 N.W. 109; Bormann v. Beckman, 73 N.D. 720, 19 N.W. 2d 455; Nelson v. Scherling, 71 N.D. 337, 300 N.W. 803.

■ We have quoted from the testimony of Sheriff Schmitz on the occasion when he was in the defendants' store. He informed Cohodes and Savran that a Jerry Long operated an oil station in Bismarck and that his brother Harold Long operated a tavern; that either Cohodes or Savran said "he must be the man" or "he is the man that signed the check". They did not deny that they made these statements, but said they could not remember the conversation with Schmitz. The sheriff stated that on the information given him by Cohodes and Savran he directed his deputy, Goldader to arrest Harold Long and bring him before the Justice of the Peace, and accordingly the deputy made the arrest. In the case of Nelson v. Scherling, 71 N.D. 337, 300 N.W. 803, 804, this court said:

"On a review of an order denying a motion for judgment notwithstanding the verdict, this court is limited to a consideration of the evidence. If the record is such that there was some issue of fact to submit to the jury, and the jury rendered a verdict thereon, then it is clear the motion for judgment notwithstanding the verdict should be denied.

"It is not necessary to review the decisions of this court setting forth the principle involved. Such motion will not be granted where there is an issue for the jury to pass upon under the evidence, as it does not go to the weight of the evidence. In passing upon such matter, the evidence is considered in the light most favorable to the party against whom the motion is made. State [ex rel. Brazerol] v. Yellow Cab Co., 62 N.D. 733, 736, 245 N.W. 382, 383."

While the evidence is unsatisfactory, nevertheless it cannot be said as a matter of law that there was no evidence in support of the verdict of the jury. The testimony of Sheriff Schmitz as to the conversation in defendants' store is not contradicted. Cohodes and Savran said they could not remember the conversation. Evidently the jury believed the testimony of the sheriff.

We conclude that upon the evidence and the record the trial court erred in granting defendants' motion for judgment notwithstanding the verdict.

■ The motion of the defendants for judgment notwithstanding the verdict was coupled with an alternative motion for a new trial. They may therefore present their alternative motion to the district court which may in its discretion grant or deny it. In the case of Martin v. Parkins, 55 N.D. 339, 213 N.W. 574, 576, this court said:

"Whether or not a new trial shall be granted rests largely in the sound discretion of the trial court. The action of the trial court in this regard will not be disturbed on appeal unless there is an abuse of discretion, and where a new trial is granted on the ground that the evidence is insufficient to sustain the verdict or judgment, the reviewing court will consider and weigh the evidence only so far as may be necessary to determine the question whether the trial court acted within its discretion. See Braithwaite v. Aiken, 2 N.D. 57, 49 N.W. 419; Pengilly v. J. I. Case Threshing Machine Co., 11 N.D. 249, 91 N.W. 63, 12 Am.Negl.R. 619; Aylmer v. Adams, 30 N.D. 514, 153 N.W. 419; Lemke v. Dougherty, 53 N.D. 382, 206 N.W. [222] 223; Standard Oil Co. v. Kennedy, 54 N.D. 31, 208 N.W. 555."

The order of the district court granting defendants" motion for judgment notwithstanding the verdict is reversed and the case remanded with leave to the defendants to present their alternative motion for a new trial.

BURKE, C. J., and SATHRE, MORRIS, JOHNSON and GRIMSON, JJ.